SALVATORE BRUSCO *vs.* ANGELO MORRY.

JANUARY 19, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J. This is an action on the case for malicious arrest. After trial in the Superior Court the jury returned a verdict for the plaintiff for $518. The action is before this court on defendant's exceptions. The only exception necessary to consider is the one to the denial of defendant's motion for a directed verdict.

Plaintiff was arrested January 18, 1930, and five hours afterward gave bail for his appearance in a district court.

On February 4, 1930, his motion that he be released from arrest and his bail discharged was granted by the district court. Subsequently the action was tried in the district court and later in the Superior Court and each trial resulted in a decision or verdict for Brusco. December 6th, judgment was duly entered as of April 16, 1930, for plaintiff. Plaintiff then commenced this action for malicious arrest.

Early in the trial a question arose as to the form of action. Plaintiff's attorney insisted that the action was for malicious arrest as distinguished from malicious prosecution or false imprisonment. The distinction between these actions seems to be one of phraseology and is immaterial under our decisions. Plaintiff could therefore have termed his action one for malicious prosecution. *Smith* v. *Markensohn,* 29 R. I. 55; *Lauzon* v. *Charroux,* 18 R. I. 467; 2 R. C. L. 487.

The *gravamen* of plaintiff's action is that he was arrested on a writ which was issued as the result of an alleged false affidavit made by defendant without having probable cause for making the affidavit.

The defenses were: that defendant had probable cause for making the affidavit; that the action was commenced upon the advice of counsel and that after the termination of the action plaintiff executed and delivered to defendant a general release of all claims and demands. Plaintiff's replication was that the release was obtained without consideration and by fraud.

The affidavit made by defendant was to the effect that he had a just claim against the plaintiff which was due; that plaintiff was about to leave the State without leaving property therein sufficient to satisfy said claim and that he had committed fraud in the disposition of his property. G. L. 1923, § 5143.

The following facts are undisputed. Defendant's action was brought to recover $350 alleged to be due for work done on plaintiff's house and in moving his garage. Plaintiff purchased a house and lot in North Providence in 1929 from

one Pate and gave him a first mortgage for $2,500. The house was damaged by fire. Plaintiff, upon the suggestion of Pate, engaged defendant to repair the house. Defendant repaired the house and was paid $493. Plaintiff and defendant signed an agreement by which defendant agreed to do certain extra work on the house for $300. November 16 defendant sent plaintiff a letter stating that the work would be completed by November 18 and that he wanted his money by November 20. December 7, 1929, plaintiff, defendant and Pate signed a joint and several note made payable to a loan company 52 weeks after date for $350. With the proceeds of the note plaintiff paid defendant $300.

Why did defendant commence an action of assumpsit against plaintiff by writ of arrest January 18, 1930? Defendant testified that about a week before the writ was issued plaintiff said he was going to the "old country;" that defendant consulted a lawyer and told him what plaintiff had said and that he had endorsed a note for plaintiff to a loan company for $350; that they went to the town clerk's office, examined the records and found that October 17, 1929, plaintiff had given a second mortgage for $1,700 upon his property to one Arlia; and that defendant's lawyer advised him to have plaintiff arrested. On cross-examination defendant testified that plaintiff paid $4,000 for the property and gave Mr. Pate a mortgage on it for $2,500 and that the second mortgage for $1,700 was $200 more than the property was worth. He further testified that he would have to pay the note he had endorsed to the loan company if the plaintiff did not pay it.

Plaintiff denied that shortly before he was arrested he had told defendant he was going to Italy. He testified that his real estate was worth four or five thousand dollars; that there was a first mortgage upon it for $2,500 and no second mortgage. He also testified that he intended to put a second mortgage upon the property for $1,700 to get money to send to his father in Italy, but that he had not yet put it on. The trial justice asked plaintiff: "How much did

you get from Arlia on the second mortgage?" and plaintiff replied: "I didn't get any money afterwards." Defendant called as a witness the town clerk. He testified that on August 17, 1929, the plaintiff gave a first mortgage for $2,500 to Pate, and on October 17 a second one for $1,700 to Arlia, and that at the time of the trial in April, 1932, neither mortgage had been discharged upon the records. Plaintiff testified in rebuttal that he did not get any money from Arlia on the second mortgage, but later, in reply to questions from the trial justice, he said he received $1,700 from Arlia in October but gave it back to him in December. Arlia testified in rebuttal that he had a second mortgage on plaintiff's property for $1,700; that he gave plaintiff this sum to send to his father in Italy and that plaintiff returned the money one or two months afterward.

The contradictory testimony of plaintiff as to the second mortgage and the money he received therefrom shows that his testimony is not entitled to credence unless corroborated. Plaintiff finally admitted he had $1,700 in his possession from August 17, 1929, until some time in December. For all that appears, he could have paid out of this $1,700 the $300 due defendant November 18. Instead of his doing so, defendant and the first mortgagee were required to sign plaintiff's note for $350 as comakers so defendant could get $300.

The mere fact that judgment was for the defendant Brusco in the original action did not of itself show that the action was malicious or brought without probable cause by plaintiff Morry. *St. Pierre* v. *Warner*, 24 R. I. 295; *Fox* v. *Smith*, 26 R. I. 1; 38 C. J. 419.

Plaintiff alleged he was arrested because defendant maliciously made a false and fraudulent affidavit without having any probable cause for making it. This allegation was material and it was necessary for plaintiff to prove the allegation by a preponderance of the evidence. Plaintiff produced no legal evidence tending to prove that defendant acted maliciously or in wanton disregard of plaintiff's

rights. In *Atkinson* v. *Birmingham*, 44 R. I. 123, this court sustained the direction of a verdict for the defendants because the evidence which showed a lack of probable cause also showed the absence of ill-will and oppression.

The law is that when a person makes a full and fair statement of his case to his attorney and acts in good faith upon his advice, he is not liable for malicious arrest if his action fails. *Lee* v. *Jones*, 44 R. I. 151; *Kitchen* v. *Rosenfeld*, 44 R. I. 399; 38 C. J. 427.

It appears that defendant was a foreman for a lumber company. He was unacquainted with plaintiff up to the time he agreed to repair his house. Defendant never had had a lawyer and was unacquainted with legal procedure. When he heard that plaintiff was going to leave the country he consulted an attorney and told him "everything" in regard to his claim against plaintiff and, after examining the land records, the attorney made out the affidavit on the writ of arrest and defendant signed and swore to it before his attorney. There is nothing in the record tending to show that defendant did not state fairly and fully all the facts within his knowledge relating to his claim against Brusco; the undisputed evidence is that defendant acted in good faith upon the advice of his attorney. Furthermore, when defendant and his attorney examined the land records and discovered that Brusco had placed a second mortgage for $1,700 upon his property, they had no knowledge that the debt secured by the mortgage had been paid. If the mortgage had been discharged when the debt was paid, defendant's attorney probably would have advised the commencement of the action by attachment instead of by arrest. Brusco's neglect to have the mortgage discharged constituted a fraud upon the defendant and sustains the allegation in his affidavit that Brusco "had committed fraud in the disposition of his property."

The fact that defendant Morry first learned of the fraud during the trial of the instant case does not preclude him from the benefit of this evidence newly discovered. In *Newton* v. *Weaver*, 13 R. I. 616, 618, this court quoted with

approval from *Bell* v. *Pearcy*, 5 Ired. 83, 84, the following: "There is no doubt that a defendant in this action (malicious prosecution) may allege that the plaintiff, though acquitted in the prosecution, was actually guilty, and that he may prove the guilt by any evidence in his power, though discovered after the prosecution began, or after it ended. The law does not give the action to a guilty man. He brings it as an innocent one, and if it appears on the trial in any way that he is not, he must fail."

For these reasons we are of the opinion that the trial justice erred in denying defendant's motion for a directed verdict and the exception thereto is sustained.

January 31, 1934, plaintiff may appear and show cause, if any he has, why the case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

HAHN, J. I am obliged to dissent from the majority opinion, particularly from those portions wherein the court says: "Plaintiff produced no legal evidence tending to prove that defendant acted maliciously or in wanton disregard of plaintiff's rights" and "There is nothing in the record tending to show that defendant did not state fairly and fully all the facts within his knowledge relating to his claim against Brusco; the undisputed evidence is that defendant acted in good faith upon the advice of his attorney."

In the action which forms the basis of these proceedings this defendant caused the arrest of the plaintiff herein by making affidavit in substance as follows: (1) that he had a just claim against this plaintiff *that was due;* (2) that this plaintiff was about to leave the State without leaving therein real or personal estate whereon an execution could be served, and (3) that this plaintiff had committed fraud in fact, in contracting the debt and in the disposition of his property.

There was no evidence presented to the jury of any direct indebtedness of plaintiff to defendant. The proceeds from the discount of the note—which is to be hereinafter referred to—were given to defendant and received by him in payment of plaintiff's indebtedness to him. As defendant was an accommodation maker of said note, liability of plaintiff to him would arise only in the event that plaintiff failed to pay said note at its maturity.

Regarding the first statement in the affidavit, that the claim was due, the note—which this plaintiff and defendant and a third party signed as comakers—was due and payable fifty-two weeks from December 7, 1929. On January 18, 1930, forty-two days after the note was signed, and the day on which plaintiff was arrested, said note was neither due nor payable. Therefore the affidavit stating that said sum was due was false. At the maturity of the note it was met by this plaintiff, and defendant was at no time called upon to meet the obligation.

Upon the second allegation there was ample evidence upon which the jury might and, as a fact, did find that plaintiff was not about to leave the State. The jury undoubtedly disbelieved defendant's statement that plaintiff and another had informed him to this effect.

As to the allegations of fraud in contracting the debt and in disposing of property, a sufficient answer is contained in the fact that the plaintiff paid the note in full at its maturity in accordance with his agreement so to do and therefore was in no manner indebted to the defendant.

At the close of the testimony the jury, under proper instructions, found in favor of this plaintiff. The record discloses ample evidence to the effect that in causing plaintiff's arrest the defendant acted maliciously and in wanton disregard of plaintiff's rights.

In my opinion the strong preponderance of the evidence supports the finding that this defendant did not make a full disclosure to his counsel. After stating generally, upon direct examination, that he told his attorney everything,

defendant, upon cross-examination as to what he specifically told his attorney, answered as follows: "I told him I endorsed a note for a man, $350." Q. "What note did you endorse?" A. "The note at the Cranston Loan Company." Q. "You signed as a co-maker?" A. "Yes, and I say the man just put in $1700; he took in $1700 a second mortgage, and ready to leave town, going to the Old Country, and I ask him what to do and he told me what to do." Q. "You told your lawyer that?" A. "Yes." Q. "What else did you tell him?" A. "That is all I told him." Q. "As a matter of fact, Mr. Brusco didn't owe you any money the day you arrested him, did he?" A. "He owes me that $350 I endorsed. If he never paid for that, I had to pay it."

The evidence indicates that defendant did not tell his attorney that the debt was not due. It is not to be presumed nor is it probable that any attorney in good standing would counsel signing and swearing to an affidavit in which were the words "is now due" upon a claim both in law and in fact not at said time either due or payable. His conduct of the action and the pleadings therein show that he considered the debt to be due, which belief he could not possibly have entertained had full disclosure been made.

It further appears to me that, as a matter of justice, when the advice of an attorney is offered as a defense to an action for malicious prosecution or abuse of process, the attorney—if his advice was given—should take the stand and testify to the facts. In the instant case the attorney was in the courtroom and his testimony was necessary to make certain and definite the rather incomplete and contradictory testimony of defendant. Had he taken the stand, he would have been required to explain the reason for advising or allowing a client to sign an affidavit alleging the debt to be due when as a matter of fact it was not due. In all probability he advised the issuance of the writ upon information from defendant that the debt was due, that plaintiff had mortgaged his property and that he was about to leave the

State. Such a partial disclosure in itself indicates concealment of a material fact from which malice and wanton disregard of plaintiff's rights may be found.

There must also be considered the fact that this defendant was not an indorser but a comaker of said note and that the action as brought, was upon the money counts, indicating that the attorney acted upon information that plaintiff owed defendant for work and labor. If defendant said anything about a note, his attorney could not have heard or understood him; for, had he heard, it is reasonable to presume that the declaration would have contained a count based on the note.

The plaintiff's contention that there was a malicious use and an abuse of the process of the court to obtain through an unwarranted arrest of the plaintiff the payment of money not due at the time of the issuance of the writ of arrest was a proper question for determination by a jury and was submitted to them under instructions which were not excepted to and which became the law of the case.

The majority opinion indicates that an inspection of the record casts much doubt upon the credibility and honesty of the plaintiff. Said opinion finds, in effect, that plaintiff, having borrowed $1700 for a certain purpose which—according to his testimony—required the use of the entire sum, was guilty of fraud in not using a portion of said sum for another and dissimilar purpose. While the testimony of plaintiff may—in certain respects—be subject to criticism, my examination of the record leads me to the conclusion that the defendant's testimony was neither definite nor true. The fact that the jury placed no reliance upon his testimony is further substantiated by their finding against the binding effect of a release which defendant offered in evidence as a bar to plaintiff's right of action. Considering the testimony as a whole, the jury believed that of this plaintiff and disbelieved that of defendant, and in support of the verdict the trial justice in his rescript said: "The jury in this case was not fooled any more than the court

was. Its verdict is fair and does real justice between the parties."

This was clearly a case in which seeing and hearing the witnesses was an element of paramount importance in determining the weight of the evidence. This court in no uncertain terms, in *Wilcox v. R. I. Co.*, 29 R. I. 292 and in numerous other cases arising subsequent to that decision, has given great weight to the opinion of the trial justice in his approval of a verdict based upon conflicting evidence. We quote again the rule approved and quoted in *Wilcox v. R. I. Co., supra:* "we will not interfere . . . because, first, the jury have found the verdict and given credit to the witnesses on the one side of the conflict; second, the judge, who also heard the testimony from the mouths of the witnesses, and weighed the same in the balance of his more cultured and accurate legal judgment, has . . . given his approval and indorsement to the verdict; and, third, this court can never have the benefit of observing the conduct and deportment of the witnesses while testifying . . . . There is nothing to show that the jury were governed by any improper motives or that the judge erred in the performance of his duty."

Upon consideration of the evidence there was no error in the ruling of the trial court denying this defendant's motion for a directed verdict. The verdict upon conflicting evidence has the support of the trial justice and should be sustained.

I am therefore of the opinion that the defendant's exceptions should be overruled and the case remitted to the Superior Court for the entry of judgment on the verdict.

*Oreal Grossman,* for plaintiff.
*Uldrich Pettine,* for defendant.