Pasquale SOLITRO

v.

Thomas MOFFATT et al.

No. 84–300–M.P.

Supreme Court of Rhode Island.

April 3, 1987.

---

Michael St. Pierre, Revens & DeLuca, Warwick, for plaintiff.

John D. Lynch, Lynch, McKiernan & Costello, Warwick, James E. O'Neil, Atty. Gen., David D. Prior, Sp. Asst. Atty. Gen., Providence, for defendants.

## OPINION

FAY, Chief Judge.

This is a civil action for malicious prosecution. A judgment for directed verdict was entered in favor of the defendants by a Superior Court justice following a jury verdict for the plaintiff in the amount of $17,-500. The plaintiff appealed. We affirm the action of the trial justice.

The plaintiff, Pasquale Solitro (Solitro), is, and has been since 1965, a correctional officer at the Adult Correctional Institutions (ACI). The defendants are members of the Rhode Island State Police. On August 5, 1976, Solitro was subpoenaed to

testify before a District Court justice regarding a charge brought by the state against inmate Ronald Thornley for possession of a "shank."[1] Solitro, during direct examination by the inmate's attorney, testified that numerous times inmates found in possession of knives were not prosecuted by the State Police. Later, under cross-examination by the state, Solitro was asked to elaborate on this statement. In response Solitro indicated that he had personal knowledge of at least one case involving himself wherein he seized a knife from the cell of an inmate named Sidney Clark, booked Clark for the infraction,[2] tagged the knife, made out a report, and referred the matter to the State Police, who apparently never prosecuted Clark. This incident was alleged to have occurred several years earlier, possibly in 1972. At the conclusion of the evidence the District Court justice acquitted Ronald Thornley.

The Defendant Thomas Moffatt (Moffatt) was present at the District Court trial on August 5, 1976, as part of the prosecution team. Upon returning to State Police headquarters later that day, Moffatt related the testimony given by Solitro to his superior, Captain Edward Pare. Moffatt also informed Pare of the trial justice's belief that the State Police were selectively prosecuting Thornley. Captain Pare instructed Moffatt to commence an investigation to determine whether Solitro's testimony relating to the Sidney Clark incident was in fact true and, if so, which member of the State Police was responsible for the failure to investigate and prosecute the offense.

The investigation began that same day. Initially, Moffatt consulted State Police detective records concerning ACI complaints, looking for any references to a knife's being seized from Sidney Clark by Solitro. This search proved fruitless. Consequently, the next day Moffatt, with assistance from Detectives Mario Virgilio, William Lynch, and John O'Neil (also named defendants in this case), began checking ACI records on Sidney Clark and collecting written witness statements.

First, Moffatt questioned Lieutenant James Goulding, the records and identification officer at the ACI. Goulding informed Moffatt that he had reviewed Clark's prison record and could find no indication that Clark had ever been booked for possession of a knife. Later that day, Detective Lynch interviewed Captain Roger Donnelly, custodian of prison disciplinary records, and Deputy Warden Ronald Brule. Donnelly's records contained no bookings of Clark for possession of a knife; however, his records only dated back to 1974. Because Brule had pre–1974 records in his possession, Lynch was referred to Brule's office. But like Donnelly, Brule could find no record on Clark regarding a booking for a knife. Brule did, however, vaguely recall something about a rusty knife's being discovered in a bedpost or air vent in Clark's cell. He could not remember when, if at all, the incident occurred, which correctional officers were involved, or whether Clark was ever booked for the incident. He told the detective he would check around with other correctional officers to see if he could learn more.

In addition to the three ACI officials, defendants also questioned Emmett Knapton and Ronald Barry of the State Marshal's office on August 6, 1976. Knapton and Barry were present in District Court on August 5 when Solitro testified. They each related what they heard Solitro testify to in court the previous day. Several weeks later, similar written statements were taken from a third state marshal, from the District Court justice who presided at the Thornley trial, and from Special Assistant Attorney General Alfred Goldstein who prosecuted the Thornley case.

On August 9, 1976, Detectives Lynch and O'Neil took a statement from Solitro him-

---

1. "Shank" is a term used by correctional officers to describe a knifelike instrument or weapon.

2. The term "booked" has special significance in correctional officers' jargon. In contrast to a criminal complaint, an institutional booking is designed to allow the ACI to take disciplinary action against an inmate for various infractions. A disciplinary board hears all the bookings and determines the penalty for such infractions.

self. Solitro told the detectives that he believed he found the knife during a routine search between February and June of 1973 while Clark was in JKL Block, that he tagged the knife and turned it in. He further indicated that one of the "brass", possibly a Lieutenant Brown or Deputy Brule, had sent him there to search the cell. He could not recall which other officers assisted him during the search, nor could he recall making out a report or referral on the matter.

██ Throughout their August 1976 investigation, Moffatt and/or Captain Pare sought advice from various prosecutors in the Rhode Island Attorney General's office concerning institution of perjury charges.[3] Upon that advice, and at the direction of Captain Pare, Moffatt on August 31, 1976 asked the presiding District Court justice from the Thornley trial to issue a warrant for Solitro's arrest. The District Court justice, relying on Moffatt's affidavit and his own recollection, issued the warrant. On September 1, 1976, Solitro was arrested and arraigned in District Court on charges of perjury and dereliction of duty.

A criminal information was filed against Solitro on January 5, 1977, in Providence County Superior Court, charging him with one count of perjury and one count of dereliction of duty. On January 18, 1977, Solitro filed a motion to dismiss the information on the ground that it was not based on probable cause. A hearing on the pretrial motion followed on February 2, 1977 before a Superior Court justice, at which time several witnesses gave testimony. On February 8, 1977, the pretrial justice found probable cause and denied Solitro's motion to dismiss with prejudice. The case proceeded to trial before another Superior Court justice, without a jury, on July 5 and 6, 1977. At the close of the state's evidence, the trial justice granted Solitro's motion for judgment of acquittal on both counts of the criminal information.

Solitro filed this suit for malicious prosecution against Moffatt, Virgilio, Lynch, O'Neil, and State Police Superintendent Walter E. Stone on July 5, 1978. At the close of Solitro's evidence and again at the close of the entire case, defendants moved for a directed verdict. The trial justice reserved his decision on the motion both times and sent the case to the jury.

In its answers to interrogatories, the jury indicated that Solitro did make a false statement under oath in District Court but that he did not knowingly do so. It also answered that only defendants Stone and Moffatt instituted the proceedings against Solitro without probable cause and with malice. After the discharge of the jury, defendants requested that the trial justice rule on their motion for directed verdict. The full extent of the trial justice's oral decision was his statement that he was "going to grant the motion for directed verdict."

In considering a motion for directed verdict, we must do what the trial justice is asked to do in the first instance. We examine the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. We do not consider the credibility of the witnesses, nor do we weigh the evidence. We then determine whether there is evidence for the jury to consider that would warrant a finding in favor of the nonmoving party. If we conclude that there is evidence supporting the nonmoving party or that there is evidence on which reasonable minds could differ, then the jury is entitled to decide the facts of the case. *Gordon v. St. Joseph's Hospital*, 496 A.2d 132 (R.I.1985); *Marcotte v. Harrison*, 443 A.2d 1225 (R.I.1982).

██ This state has long recognized the tort of malicious prosecution. To be entitled to recover damages for malicious prosecution, Solitro had to prove that (1) defendants initiated a prior criminal proceeding against

---

**3.** We recognize the fact that reliance on the advice of an attorney can be a complete defense to an action for malicious prosecution when the accuser makes a full and fair disclosure of all the facts within his knowledge that a reasonable man would regard as pertinent. *Brusco v. Mor-*

*ry*, 54 R.I. 108, 170 A. 84 (1934). However, in light of the analysis beginning *infra* p. 8, and our conclusion that the prosecution was initiated with probable cause, an examination of the issue of the Attorney General's advice is unnecessary.

him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it terminated in Solitro's favor. *Nagy v. McBurney*, 120 R.I. 925, 392 A.2d 365 (1978). Although recognized in this state, actions for malicious prosecution nevertheless are traditionally disfavored in law because of the belief that they tend to deter prosecution of crimes. *Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242 (1977). Thus it is that we subject such actions to stricter scrutiny, including the requirement that the plaintiff establish the elements of malice and want of probable cause by "clear proof." *Id.* at 526, 368 A.2d at 1246; *Fox v. Smith*, 26 R.I. 1, 5, 57 A. 932, 934 (1904).

■ There being undisputed evidence in this case that defendants initiated a criminal proceeding against Solitro in 1976 that terminated in Solitro's favor, we turn directly to the issue of probable cause. Whether defendants had probable cause to initiate a criminal action against Solitro is a question of law to be determined by the court. Prosser & Keeton, *The Law of Torts* § 119 at 882 (5th ed. 1984); Restatement (Second) *Torts* § 673, comment (e) at 450 (1977). We have previously held that probable cause exists when facts and circumstances would lead an ordinarily prudent and careful person to conclude that the accused is guilty. *Quinlan v. Breslin*, 61 R.I. 327, 330, 200 A. 989, 991 (1938). This is not to say, however, that the facts giving rise to prosecution must be so strong as to convince a prudent person that guilt exists beyond a reasonable doubt; it is sufficient that the facts known to the accuser provide reasonable grounds for a belief that criminal activity at the hands of the accused has occurred. *Johnson v. Palange*, 122 R.I. 361, 372, 406 A.2d 360, 366 (1979).

■ It is Solitro's position on appeal that defendants lacked probable cause to initiate a prosecution. Solitro argues at length that defendants failed adequately to inves-

tigate the facts surrounding the validity of his statements made during the August 5 trial. Solitro cites as examples of deficiency the fact that defendants neglected to ask Lieutenant Goulding whether the ACI inmate records were accurate, to get back to Deputy Brule regarding his recollection of a Sidney Clark knife incident, to talk to Lieutenant Brown despite the fact that Solitro mentioned Brown as being present when Solitro seized the knife from Clark's cell,[4] and to interview corrections Officer Coit, the clerk in charge of receiving bookings from his fellow guards. Given the fact that Moffatt knew the booking procedures at the ACI and knew of the turmoil at the prison in 1972 and 1973, Solitro contends that defendants should have known that the ACI records were unreliable. A reasonable person in defendant's position, according to Solitro, would have conducted a more thorough investigation, and had defendants done so, they would have found no basis on which to prosecute Solitro.

We disagree with Solitro's assessment of the police investigation. "[I]t may be said that the defendant has probable cause only when a reasonable [person] in his position would believe, and the defendant does in fact believe, that he has sufficient information as to both the facts and the applicable law to justify him in initiating the criminal proceeding without further investigation or verification." Restatement (Second) *Torts* § 662, comment (j) at 429. Furthermore, as long as a reasonable man in like circumstances would believe the conduct of the accused to constitute the crime charged, "the existence of exonerating facts is immaterial unless those facts would have been disclosed by such an investigation as the [defendant] should have made before initiating the proceedings." Restatement (Second) *Torts* § 662, comment (e) at 425.

Here a review of the evidence in the light most favorable to Solitro reveals that defendants conducted an initial investigation that disclosed sufficient facts for them rea-

---

4. The plaintiff, to the contrary, told police investigators, not that Lieutenant Brown was present during the search, but rather that Lieutenant Brown might have been one of the "brass" that directed him to conduct the search.

sonably to believe that Solitro offered perjured testimony. The defendants questioned the three correctional officers responsible for maintaining inmate records and relied upon their representations that the records contained no evidence of a booking report for prisoner Clark. In our opinion reasonable persons in like circumstances would have relied on the statements of these officials. The defendants had no reason to doubt the accuracy of the prison records because the statements of the officials, that they had reviewed their records and found nothing, carried an implicit representation that the records were reliable.

Although testimony offered later at Solitro's criminal trial exposed flaws in the record-keeping functions at the ACI, probable cause must be determined in light of those facts that the defendant knows or reasonably believes to exist at the moment he initiates prosecution. Prosser & Keeton, *The Law of Torts*, at 876. Consequently, we find the discrepancy between Solitro's August 5 testimony and the unexplained absence of a corresponding booking report in and of itself constituted sufficient fact to support probable cause to prosecute on August 31, 1976.

In addition, the record shows that the District Court justice, on August 31, 1976, found probable cause to issue a warrant for Solitro's arrest relying upon Moffatt's accompanying affidavit and the justice's own recollection of Solitro's testimony. Moreover, a Superior Court justice in February 1977 reviewed the criminal information filed by the Attorney General against Solitro and denied Solitro's motion to dismiss for lack of probable cause. The information packet before the pretrial justice at that time contained the same material that was within the possession and knowledge of defendants when they sought the arrest warrant. The pretrial justice also heard testimony from several witnesses.

 We find the District Court justice's consideration of the warrant applica-

tion to have created a presumption that the arrest was issued on probable cause. *Broughton v. State*, 37 N.Y.2d 451, 335 N.E.2d 310, 373 N.Y.S.2d 87 (1975). Likewise, the pretrial justice's denial of the motion to dismiss created a presumption that probable cause existed to prosecute. Solitro could have rebutted this presumption with evidence that the court's decision was procured by fraud, perjury, misrepresentation, or falsification of evidence. *Cf. Meyer v. Glover*, 152 Ga.App. 679, 682, 263 S.E.2d 539, 542 (1979) (binding over of accused is prima facie, though not conclusive, evidence of probable cause); *Johnson County Rural Electric Membership Corp. v. Burnell*, 484 N.E.2d 989, 992 (Ind.App. 1985) (rebuttable presumption of probable cause established by judicial determination of probable cause at a prior probable-cause hearing); *Trottier v. West*, 54 A.D.2d 1025, 1025, 388 N.Y.S.2d 180, 181 (1976) (magistrate's decision at preliminary hearing to bind the accused over to await grand jury action creates rebuttable presumption of probable cause); *see also* Prosser & Keeton, *The Law of Torts*, at 881; Restatement (Second) *Torts* § 663(2), comment (g)(h) at 431. Solitro, having introduced no evidence regarding the perpetration of fraud, perjury, misrepresentation, or falsification of evidence before either the District Court or the Superior Court, failed to rebut the presumption of probable cause.[5]

Consequently, the plaintiff's appeal is denied, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

---

**5.** Because of plaintiff's failure to establish a want of probable cause, we need not reach the issue of malice.