Stanley HENSHAW III

v.

Brendan P. DOHERTY et al.

No. 2003–526–Appeal.

Supreme Court of Rhode Island.

Sept. 2, 2005.

Joseph P. Casale, Esq., Providence, for Plaintiff.

Michael P. Jolin, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

ROBINSON, Justice.

The plaintiff, Stanley Henshaw III, appeals from the Superior Court's grant of summary judgment in favor of the defendants—viz., the State of Rhode Island and also Brendan P. Doherty, Michelle Haggerty, John M. Lacross, Steven G. O'Donnell, John P. Blessing, and Joseph S. Delprete, all members of the Rhode Island State Police. For the reasons set forth below, we affirm the judgment of the Superior Court.

## Facts and Travel

The instant case stems from the arrest on April 5, 1993, of plaintiff by the Rhode Island State Police on a charge of simple assault. The arrest was made pursuant to a warrant.

In the month preceding his arrest, Henshaw had been the subject of an undercover investigation by the state police. The investigation had been commenced because of allegations that Henshaw was operating an escort service which purportedly provided sex-for-hire services and not mere escort services.

As part of its investigation, the state police selected Trooper Michelle Haggerty to serve as an undercover investigator. She was to work in coordination with Detective Corporal Lacross, Detective Corporal Doherty, and Detectives O'Donnell, Blessing, and Delprete—all members of the State Police Intelligence Unit.

Using an alias and acting in an undercover capacity, Trooper Haggerty spoke with Henshaw several times on the phone, presenting herself as a college student interested in employment with Henshaw's purported escort service agency. These telephone conversations were recorded by the state police. Then, on March 31, 1993, Trooper Haggerty met with Henshaw at the Holiday Inn in Providence.

During the meeting, she wore an electronic surveillance device that allowed Detective Corporal Doherty and Detective Corporal Lacross to monitor what was being said. During the meeting at the Holiday Inn, Henshaw did not discuss the escort service, but he arranged for Trooper Haggerty to telephone him later in the evening. When Trooper Haggerty telephoned Henshaw, he asked her to come to his apartment. Trooper Haggerty went to the apartment to meet with Henshaw again. During this second meeting, she again wore an electronic surveillance device, and Detective Corporal Doherty and Detective Corporal Lacross monitored her conversation with Henshaw in his apartment.

The surveillance device recorded the conversation between Trooper Haggerty and Henshaw, of which the following is a portion:

"Haggerty: How do you want me to prove it to you that I'm not law enforcement officer? Now what are your intentions? Now you need to explain to me what it is exactly....

"Henshaw: Well, I. ....prove to me that you're not law enforcement person.

"Haggerty: How do you want me to prove it?

"Henshaw: Come over here.

"Haggerty: Come on up closer to you?

"Henshaw: Just. ....okay. ....prove that you're not ...

"Haggerty: No, I don't want you to touch me! I mean ... can, can we talk a little bit more about this job or what, what, what do you expect....

"Henshaw: .....I want you to prove to me, that you're not a law enforcement person. That's why I said, just that you're not a law enforcement person....I'm not gonna do anything else, just....

"Haggerty: Okay....

"Henshaw: .....I'm not gonna take ....do you mind if I just do this? I'm not going to hurt you.

"Haggerty: Okay.

"Henshaw: Just....

"Haggerty: Well....

"Henshaw: [unintelligible.]

"Haggerty: No, no, no. .... whenever you want me to unbutton my .... you need to tell me. Now my friend told me that I was...."

Upon hearing how the conversation was progressing, Detective Corporal Doherty and Detective Corporal Lacross rang Henshaw's doorbell; and, when the door was opened, they escorted Trooper Haggerty from the premises. Detective Corporal Doherty then prepared an affidavit, which he used to support an application to the District Court for a warrant for Henshaw's arrest.[1] (A portion of the affidavit is quoted verbatim in part "II" of this opinion.)

Henshaw was eventually acquitted of the criminal charge of simple assault after a bench trial that was conducted in the District Court on May 10, 1993. Then, on April 2, 1996, almost three years after his acquittal, Henshaw commenced a civil action against defendants for false arrest, malicious prosecution, and negligent supervision.[2]

On February 6, 2003, defendants filed a motion for summary judgment contending (1) that an action under 42 U.S.C. § 1983 would not lie against these defendants as a matter of law, (2) that the existence of probable cause defeats plaintiff's claims of false arrest and malicious prosecution, and (3) that the public duty doctrine provides the state with absolute immunity from the

negligent supervision claim. The plaintiff objected, alleging that the affidavit that served as the basis for the issuance of the warrant for plaintiff's arrest misled the judge because it was materially defective. (According to plaintiff, the affidavit did not accurately represent his dialogue with Trooper Haggerty in the apartment and did not contain certain allegedly pertinent facts that would cast doubt on the existence of sufficient probable cause.)

The defendants' motion for summary judgment was heard and granted by the Superior Court on September 9, 2003. In granting the motion, the motion justice determined that, as a matter of law, there was probable cause to arrest Henshaw, and he ruled that that determination required the dismissal of plaintiff's state and federal allegations of false arrest and malicious prosecution.[3] The motion justice further held that Henshaw's negligent supervision claim failed as a matter of law under the public duty doctrine. Judgment in favor of all defendants was entered on September 16, 2003, and plaintiff timely appealed.

On appeal, Henshaw continues to press his claim that Trooper Haggerty consented to a touching by plaintiff and that that alleged fact was omitted from Detective Corporal Doherty's affidavit. He further argues that the motion justice incorrectly found that the omission of the word "okay" from the affidavit was the sole basis for plaintiff's assertion that no probable cause

---

1. Rule 4(a) of the Superior Court Rules of Criminal Procedure empowers the designated judicial officers to issue an arrest warrant if it appears "that there is probable cause to believe that an offense has been committed and that the defendant has committed it * * *."

2. The false arrest and malicious prosecution counts were brought under both the common law and 42 U.S.C. § 1983.

3. The motion justice noted that the basis for plaintiff's claim concerning the affidavit was

that Detective Corporal Doherty did not include in his affidavit the fact that Trooper Haggerty had uttered the word "okay" twice during the course of her conversation with plaintiff in his apartment. Henshaw's opposition to defendants' motion for summary judgment argued that Trooper Haggerty's statements of "okay" constituted evidence that she had actually consented to plaintiff's touching her body.

existed to support the issuance of the arrest warrant. In support of this contention, he refers to several other alleged omissions from the affidavit that he contends would suggest among other things that Trooper Haggerty's statements and actions "enticed plaintiff into criminal activity." He further argues that there is no evidence to support the statement by Detective Corporal Doherty in his affidavit that "[Henshaw] grabbed [Trooper Haggerty's] blouse and attempted to pull open the top section, pulling the top button apart." He alleges that Detective Corporal Doherty attempted to "spice up" the affidavit in order to facilitate a finding of probable cause by the judge.

### Standard of Review

■ The party opposing a motion for summary judgment has the burden of establishing the existence of a disputed material fact. *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996) ("[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions."); *see also Duffy v. Dwyer,* 847 A.2d 266, 269 (R.I.2004); *Taylor v. Mass. Flora Realty, Inc.,* 840 A.2d 1126, 1129 (R.I.2004); *United Lending Corp. v. City of Providence,* 827 A.2d 626, 631 (R.I.2003).

■ We review the grant of summary judgment *de novo. Duffy,* 847 A.2d at 268. And in doing so, we apply the same standards as did the motion justice. *Tavares v. Barbour,* 790 A.2d 1110, 1112 (R.I.2002); *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co.,* 635 A.2d 1181, 1185 (R.I.1994).

### Analysis

The counts contained in plaintiff's complaint are as follows: false arrest in violation of 42 U.S.C. § 1983 (count 1); malicious prosecution in violation of the Fourteenth Amendment to the United States Constitution (count 2); false arrest in violation of state tort law (count 3); malicious prosecution in violation of state tort law (count 4); and negligent supervision of its employees on the part of the State of Rhode Island (count 5).

After setting forth a preliminary observation, we shall treat the two malicious prosecution counts in a consolidated matter, and we shall deal likewise with the two false arrest counts. We shall then address the negligent supervision count.

### I

### Preliminary Observation

■ The fact that the state police opted to proceed by seeking an arrest warrant rather than by simply making an immediate arrest on the scene is not at all insignificant as we consider the facts of this case in the light of the controlling principles of law. Just as is the case with respect to searches conducted pursuant to a warrant, it is our view that, in close cases concerning the validity of an arrest, the benefit of the doubt should go to the authorities who have obtained a warrant from a neutral judicial officer before making the arrest. *See United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (citing with approval the principle that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall"); *see also Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("The Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a war-

rant,' * * * and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive."); *Ventresca,* 380 U.S. at 108, 85 S.Ct. 741 ("A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."); *Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991) ("Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, * * * and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden * * *.").[4]

## II

### Malicious Prosecution

 To establish a claim of malicious prosecution[5], plaintiff must prove four elements: (1) the initiation of a criminal proceeding against the person who is now the tort plaintiff; (2) the termination of that previous proceeding in said person's favor; (3) a lack of probable cause on defendants' part when they initiated the criminal pro-

ceeding; and (4) the existence of malice on defendants' part.[6] *See Solitro v. Moffatt,* 523 A.2d 858, 861–62 (R.I.1987); *Powers v. Carvalho,* 117 R.I. 519, 526, 368 A.2d 1242, 1246 (1977) ("[M]alicious prosecution is the institution of legal proceedings whereby an arrest is made under a lawful process and the essential elements of such an action are proof that the party instituting the proceedings which resulted in the arrest had acted with 'malice and want of probable cause.' "); *see also Toste Farm Corp. v. Hadbury, Inc.,* 798 A.2d 901, 907 (R.I. 2002); *Kingstown Mobile Home Park v. Strashnick,* 774 A.2d 847, 858 (R.I.2001); *Hillside Associates v. Stravato,* 642 A.2d 664, 667 (R.I.1994); *Johnson v. Palange,* 122 R.I. 361, 364–65, 406 A.2d 360, 362 (1979).

In this case, we can limit our attention to the lack of probable cause element in the foregoing enumeration of the elements of the tort of malicious prosecution. It is entirely clear to us that there certainly was probable cause for the issuance of the warrant for the arrest of Henshaw. Indeed, we think that Henshaw's contention to the contrary borders on the frivolous.

 In *Ensey v. Culhane,* 727 A.2d 687 (R.I.1999), we summarized as follows the probable cause requirement in the context of an arrest or arrest warrant:

"The standard of probable cause either for arrest or the issuance of an arrest

---

4. In this particular context, as we seek to define the sometimes elusive concept of "probable cause," we see no reason for differentiating between judicial opinions that deal with search warrants and those that deal with arrest warrants.

5. Malicious prosecution is a disfavored tort in this jurisdiction. *See, e.g., Solitro v. Moffatt,* 523 A.2d 858, 862 (R.I.1987) ("Although recognized in this state, actions for malicious prosecution nevertheless are traditionally disfavored in law because of the belief that they

tend to deter prosecution of crimes."); *see also Brough v. Foley,* 572 A.2d 63, 66 (R.I. 1990).

6. Although the present case involves a criminal prosecution, we of course recognize that a prior civil proceeding can also give rise to a malicious prosecution action. *See, e.g., Butera v. Boucher,* 798 A.2d 340, 352 (R.I.2002); *Hillside Associates v. Stravato,* 642 A.2d 664, 667 (R.I.1994); *see also Clyne v. Doyle,* 740 A.2d 781, 782 (R.I.1999).

warrant has often been defined as those facts and circumstances known to the police (or magistrate) or of which they have reasonably trustworthy information that would cause a person of reasonable caution to believe that a crime has been committed and that the person under suspicion has committed it." *Id.* at 691.[7]

It should be borne in mind that a finding of "probable cause" can and often does rest upon evidence that would not by itself be sufficient to prove guilt in a criminal trial. *State v. Rios*, 702 A.2d 889, 890 (R.I.1997) ("We have often stated that probable cause need not reach the standard of proof beyond a reasonable doubt or even proof that might establish a prima facie case sufficient to be submitted to a jury.").[8] As the United States Supreme Court said in *Ventresca:* "[T]his Court has long held that 'the term "probable cause" * * * means less than evidence which would justify condemnation' * * *." 380 U.S. at 107, 85 S.Ct. 741 (quoting *Locke v. United States*, 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813)).[9]

In applying the foregoing principles, the United States Supreme Court has indicated that the existence of probable cause should be determined in accordance with "a flexible 'totality-of-the-circumstances' analysis." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Supreme Court in *Gates* elaborated on the meaning of this analytical approach as follows:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. 2317 (citing *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

In other words, the approach to the probable cause question should be

---

**7.** Similarly, in Solitro, we summarized the concept of probable cause as follows:

> "We have previously held that probable cause exists when facts and circumstances would lead an ordinarily prudent and careful person to conclude that the accused is guilty. * * * This is not to say, however, that the facts giving rise to prosecution must be so strong as to convince a prudent person that guilt exists beyond a reasonable doubt; it is sufficient that the facts known to the accuser provide reasonable grounds for a belief that criminal activity at the hands of the accused has occurred." *Solitro*, 523 A.2d at 862; *see also State v. Ortiz*, 824 A.2d 473, 481 (R.I.2003); *State v. Burns*, 431 A.2d 1199, 1203 (R.I.1981).

**8.** To the extent that an affidavit supporting a warrant is partially based on or accompanied by hearsay, that fact alone does not invalidate the warrant. *See State v. Gomes*, 764 A.2d

125, 131 (R.I.2001) ("It is well settled that reliable hearsay may be used in order to establish probable cause for the purpose either of an arrest or issuance of a warrant."); *see also* 6A C.J.S. Arrest § 25 (2004).

**9.** See also *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301, 303 (1st Cir. 1999) ("The phrase 'probable cause' is used, in the narrow confines of Fourth Amendment precedent, to establish a standard less demanding than 'more probable than not.' For example, arrests—made long before all proof is assembled for a trial—can be justified as based on probable cause by showing a reasonable basis for belief that a suspect committed a crime; in many cases such a basis exists without a 50 percent-plus likelihood that the suspect is guilty."); *Menebhi v. Mattos*, 183 F.Supp.2d 490, 500 (D.R.I.2002) ("A probable cause determination requires only a probability or substantial chance of illegal activity.").

pragmatic and flexible. *See State v. Spaziano*, 685 A.2d 1068, 1069 (R.I.1996) ("Probable cause is determined under a commonsense test * * *."); *see also Ventresca*, 380 U.S. at 108, 85 S.Ct. 741 ("[A]ffidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion."); *State v. Correia*, 707 A.2d 1245, 1249 (R.I.1998); *State v. Hightower*, 661 A.2d 948, 959 (R.I.1995). In accordance with that principle, the judicial officer who reviews a warrant application is permitted to draw reasonable inferences from the affidavit that is presented to him or her. *See State v. Pratt*, 641 A.2d 732, 736 (R.I. 1994) ("[A] judicial officer may draw reasonable inferences from the affidavit in order to reach a determination of probable cause * * *.").

■ We have repeatedly emphasized that the government's burden in establishing "probable cause" for issuing a valid warrant is substantially less onerous than is its burden when it must prove guilt beyond a reasonable doubt at a criminal trial. *See, e.g., Rios*, 702 A.2d at 890 ("We have often stated that probable cause need not reach the standard of proof beyond a reasonable doubt or even proof that might establish a prima facie case sufficient to be submitted to a jury."); *State v. Kowal*, 423 A.2d 1380, 1383 (R.I.1980); *see also State v. Verrecchia*, 880 A.2d 89, 94 n. 15 (R.I. 2005) ("It should go without saying that a finding of 'probable cause' can and often does rest upon evidence that would not by itself be sufficient to prove guilt in a criminal trial."). *See generally United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■ Applying the foregoing principles to the facts of this case, we are fully persuaded that there was probable cause for issuing the arrest warrant. The existence of probable cause can sometimes be determined as a matter of law; and therefore, in appropriate situations, that issue can properly be the subject of a motion for summary judgment. *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir.2003). This was just such a case.

■ The following significant statement is contained in the April 1, 1993 affidavit of Detective Corporal Doherty of the state police that was submitted to a judge of the District Court in support of the request for the issuance of a warrant for the arrest of defendant Henshaw:

"While the undercover trooper was monitored, it was apparent during the conversation that Henshaw was making sexual advancement. The undercover trooper made it quite clear that she was not interested in Mr. Henshaw and he grabbed her blouse and attempted to pull open the top section, pulling the top button apart. At this point, as a result of hearing this over the monitor, members of the State Police Intelligence Unit immediately responded into the apartment for the safety of the undercover operative."

The fact that the affidavit did not quote the exact words that were exchanged between Henshaw and Trooper Haggerty in Henshaw's apartment is not determinative in our analysis. The members of the State Police Intelligence Unit who monitored that conversation were entitled to make a reasonable inference on the basis of the entirety of the conversation (which included such explicit statements by Trooper Haggerty as: "No, I don't want you to touch me!").[10] The fact that Trooper Hag-

---

**10.** While the phrase in the affidavit about

Henshaw's actions with respect to Trooper

gerty said "okay" at two random points in the conversation is not inconsistent with the listening officers' conclusion that she was about to be touched against her will.[11] The members of the State Police Intelligence Unit were laudably concerned about the well-being of a fellow trooper who was acting in an undercover capacity while investigating allegations of sex-related wrongdoing. Detective Corporal Doherty's conclusion (as stated in his affidavit) that "Henshaw was making sexual advancement" was quite rationally derived from the conversation that was being electronically monitored. In our judgment, the affidavit of Detective Corporal Doherty provided a more than sufficient basis for a finding of probable cause.

In addition, we find the following extract from the lengthy witness statement of Trooper Haggerty (marked as having been executed at the Wickford Barracks at 8 a.m. on April 1, 1993—the day after the incident in Henshaw's apartment) to be noteworthy:

"He then asked me to come and sit closer to him on the couch. I then moved closer to him. He then put his arms on my shoulders and stated to me, 'Katie, you have to pass one more test.' He then proceeded to touch my blouse and began to unbutton my blouse. At this point I stated to him that I did not want him to touch me. He then continued to say that I had to prove to him that I was not a law enforcement officer.

He continued to unbutton my blouse and pushed my blouse away from my chest area exposing my breast area. At this point I told him that he needed to tell me what was expected of me. The doorbell then rang."

Even though the witness statement of Trooper Haggerty is not alluded to in Detective Corporal Doherty's affidavit, we do not hesitate to cite it for its corroborative effect—especially since appellant himself has opted to quote from the witness statement to support his argument to this Court and has appended the full text of the document as an exhibit to his brief. Although we do not base our decision upon the corroborative effect of Trooper Haggerty's witness statement, we are nonetheless impressed by the fact that her narrative of what transpired within the apartment is reasonably consistent with what Detective Corporal Doherty's affidavit states he inferred from his listening post outside the apartment.

In the absence of any genuine issue of material fact, summary judgment was appropriately granted in defendants' favor on both the common law and 42 U.S.C. § 1983 malicious prosecution counts. *See Manning Auto Parts, Inc. v. Souza,* 591 A.2d 34, 35 (R.I.1991); *Trend Precious Metals Co. v. Sammartino, Inc.,* 577 A.2d 986, 988 (R.I.1990).

■ In view of our holding as to plaintiff's failure to establish a necessary element of a common law malicious prose-

---

Haggerty's blouse could not have been entirely based on what the other troopers *heard,* it is our view that the affidavit of Detective Corporal Doherty provided a sufficient basis for a finding of probable cause even prescinding entirely from that phrase. *See generally United States v. Parcels of Land,* 903 F.2d 36, 47 (1st Cir.1990) ("Even if we corrected all of the claimed material omissions, and disregarded the alleged falsehoods and the challenged statements of confidential informants,

there still would exist more than enough evidence to establish probable cause.").

11. An investigator is entitled to make rational inferences as to the sense of the overall meaning of a conversation to which he or she is listening. Indeed, such a "gestalt" approach to the meaning of a conversation is usually more consistent with common sense than would be a myopic focusing on a particular word taken out of context.

cution claim, his allegation of malicious prosecution under 42 U.S.C. § 1983 necessarily fails as well. *See Estate of Smith,* 318 F.3d at 521; *Weinstock v. Wilk,* 296 F.Supp.2d 241, 248 (D.Conn.2003).[12]

## III

### False Arrest

■■■ "The essential element [of a false arrest claim] is the restraint of another person without legal justification or without any color of legal authority." *Mailey v. Estate of DePasquale,* 94 R.I. 31, 34, 177 A.2d 376, 379 (1962); *see also Mann v. Cannon,* 731 F.2d 54, 63 (1st Cir.1984); *Johnson,* 122 R.I. at 365, 406 A.2d at 362; *Clarke v. Sullivan,* 99 R.I. 96, 99, 205 A.2d 828, 830 (1964).

■■■ In *Powers,* 117 R.I. at 529, 368 A.2d at 1248, we adopted the rule "that the good-faith but mistaken informant who simply reports his or her version of the facts to the police or the prosecuting authority is not liable in an action for false arrest, but the individual who knowingly gives false information is liable when such information leads to an arrest."

■■■ Since we have already held that there was probable cause, the arrest of Henshaw was legally justified. As a result, the false arrest claim must fail—since "a necessary element of that claim is an illegal arrest." *Acosta v. Ames Department Stores, Inc.,* 386 F.3d 5, 12 (1st. Cir.2004); *see also Weinstock,* 296 F.Supp.2d at 247 ("The existence of probable cause is a complete defense to a false arrest claim.").

Moreover, with respect to plaintiff's false arrest claim under 42 U.S.C. § 1983,

such a claim is also barred—since there was probable cause for the arrest. *See Scott v. District of Columbia,* 101 F.3d 748, 753 (D.C.Cir.1996) ("The elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim."); *see also Anderson v. Franklin County,* 192 F.3d 1125, 1131 (8th Cir.1999) (dismissing a false arrest claim under 42 U.S.C. § 1983 because the officer had probable cause to make the arrest); *Scott,* 101 F.3d at 754 ("[Plaintiff] pleaded both constitutional and common law false arrest claims, and in view of the identity of the underlying allegations, the constitutional claim cannot stand if the common law claim fails for lack of sufficient evidence."); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); *Weishapl v. Sowers,* 771 A.2d 1014, 1023 (D.C.App.2001).

## IV

### Negligent Supervision

■■■ In view of the fact that we have determined that there were no underlying common law tort or constitutional violations by the individual defendants, the state cannot be liable for negligent supervision in this case. *See Acosta,* 386 F.3d at 12; *Evans v. Avery,* 100 F.3d 1033, 1040 (1st Cir.1996). (We acknowledge the fact that the motion justice disposed of this issue on the basis of the public duty doctrine. Since we have dealt with the negligent supervision claim on a different basis, we need not opine upon the trial justice's ruling in that regard.)

12. In *Graff v. Motta,* 695 A.2d 486, 492 (R.I. 1997), we discussed the relationship between 42 U.S.C. § 1983 and common law torts, and we stated: "In order to prevail on a § 1983 claim, a plaintiff must assert more than 'that a common law tort was committed by a state official.' "

## Conclusion

For these reasons, we affirm the judgment of the Superior Court granting summary judgment in the defendants' favor. The record may be returned to the Superior Court.