317 A.2d 437.

STATE *vs.* MAUREEN ARRUDA.

APRIL 11, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

60

Paolino, J. The indictment in this case charges that on September 12, 1971, in Portsmouth the defendant "* * * did then and there carry in a motor vehicle a fire bomb, so called, i.e., a Molotov Cocktail, in violation of 11-47-21 of the General Laws of Rhode Island, 1968 Revised." The case was heard before a justice of the Superior Court and a jury. After a verdict of guilty the defendant filed an appeal to this court.

At about 4:30 a.m. on September 12, 1971, two Portsmouth police officers, while on routine patrol, came upon a motor vehicle parked on the travel portion of Old West Main Road with three persons, two males and defendant, standing behind the vehicle. One of the males had a can of beer in his hand. After one of the officers, Werner Martins,

asked for and received their identifications, he ascertained that they were of age and had driver's licenses. He then had them move away from their vehicle to approximately half way between their vehicle and the police car which was parked nearby, with one of the other officers standing by them.

Officer Martins then approached the vehicle and looked inside with a flashlight.[1] He saw a glass jar on the front seat on the passenger side. The jar appeared to be filled with some sort of substance and stuffed with rags. He said the jar was two-thirds full of a clear liquid, and filled with what appeared to be a rag with about eight inches of it overflowing the mouth. It is in evidence as State's Exhibit No. 1. Officer Martins testified that the jar smelled like gasoline and that it was familiar to him because it was similar to a type of explosive that was shown to him at the police academy where they had a man explain what certain explosives were. He also saw what appeared to be a five-gallon gas can on the back seat of the car.

The defendant, her two companions, and the jar were taken to the police station. After she had been given the *Miranda* warnings[2] and had knowingly and voluntarily waived same, defendant, while being interrogated by the police, made certain inculpatory oral statements to the effect that her boyfriend had made a bomb 'out of a jar of gasoline and linen which was intended for her to throw at her parents' home. All three were subsequently indicted separately and defendant's trial was severed from the others.

---

[1]During oral argument defendant's counsel stated that he was not pressing any challenge to the legality of the officer's action. Therefore we are not called upon to pass on the legality of the officer's search with the flashlight.

[2]See *Miranda* v. *Arizona*, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## I

The defendant's first argument is that she was under arrest the moment Officer Martins ordered her to withdraw to another place; that her arrest at that time was illegal because there was no probable cause to arrest her; and that therefore the incriminating oral statements made by her at the police station were not admissible at her trial and should have been suppressed. The defendant further contends that the giving of the *Miranda* warnings does not obviate an illegal arrest and thereby render admissible inculpatory statements made thereafter. It appears from the transcript that the trial justice denied defendant's motion to exclude the incriminating statements made by defendant at the police station.

In considering defendant's contention we shall assume, without deciding, that there was no probable cause for defendant's arrest and that her arrest was illegal. The only question remaining is whether, on this record, the trial justice erred in refusing to exclude defendant's inculpatory oral statements.

This precise question was before us only recently in *State* v. *LaRosa,* 112 R. I. 571, 313 A.2d 375 (1974). We held in that case that an illegal arrest does not render a subsequent confession inadmissible per se and that a confession may be admitted after the accused has been advised of his constitutional rights and has knowingly and voluntarily executed a waiver of those rights. In the case at bar it was stipulated that the full *Miranda* warnings had been given and no question was raised about the voluntariness of defendant's statements. In fact defendant's counsel admitted before the trial justice in open court that defendant was not claiming duress or compulsion of any kind. In the circumstances *State* v. *LaRosa, supra,* is controlling and dispositive of this issue.

## II

The defendant next argues that State's Exhibit No. 1 was not a bomb according to the classic definition of that term; that the trial justice erred in refusing to give certain instructions to the jury which she had requested; and that he erred in refusing to submit to the jury a special interrogatory requested by her.

We consider first defendant's claim that State's Exhibit No. 1 was not a bomb. Doctor Richard C. Wilkinson, a criminalist at the laboratories for scientific criminal investigation at the University of Rhode Island, was called as an expert witness by the state. He stated that he had seen State's Exhibit No. 1 before and had examined its liquid content, which he said was gasoline; that, on occasion, in his work he dealt with items that might be characterized as bombs or fire bombs or explosives; and that he had examined items like State's Exhibit No. 1. He testified that if the rags were wadded into the neck of the jar and then lit, and if the jar were thrown and hit an object, the gasoline in the jar would flare up and spread rapidly.

General Laws 1956 (1969 Reenactment) §11-47-21 contains no definition of a "bomb." Other than to state that State's Exhibit No. 1 is not a bomb, defendant has cited no authority to support her claim that State's Exhibit No. 1 is not a bomb. In *Saunders* v. *State*, 275 A.2d 564, 566 (Del. 1971), the court defined a Molotov cocktail as:

> " 'A makeshift incendiary bomb made of a breakable container filled with flammable liquid and provided with a wick composed of any substance capable of bringing a flame into contact with the liquid.' "

We adopt the definition of the Delaware court as an adequate definition of a "bomb" as used in our statute. As pointed out by the state, all of the items necessary to form a Molotov cocktail, which is defined as a bomb in *Saunders, supra*, were present in the instant case, namely, a glass jar,

gasoline inside the jar, and a rag inside the mouth of the glass jar which could, upon being lit, cause the object to burst into flame upon impact. On the basis of the record we hold that State's Exhibit No. 1 is a bomb within the meaning of §11-47-21.

Next, we consider defendant's contention that the trial justice erred in refusing to instruct the jury in accordance with certain requests made by her dealing with the definitions of bomb, Molotov cocktail, and hand grenade. It appears from the transcript that the trial justice, in charging the jury, defined a Molotov cocktail in accordance with the *Saunders* v. *State, supra,* definition. A reading of the instructions given by the trial justice shows that the instructions which defendant requested, insofar as they related to the evidence, were adequately covered, and consequently the trial justice's refusal to give the requested instructions is not error. *State* v. *Lisi,* 105 R. I. 516, 253 A.2d 239 (1969).

The defendant's final argument under Point II in her brief is that the trial justice erred in refusing to submit the following special interrogatory to the jury: "Is a Molotov cocktail a bomb?" In view of the trial justice's instructions wherein he defined a bomb within the meaning of §11-47-21, we find no error in his refusal to submit the special interrogatory to the jury. The jury was adequately instructed on this question as well as on the state's burden of proving beyond a reasonable doubt every essential element of the offense charged.

### III

Under this point in her brief the defendant has grouped together a combination of claims urging that there is no evidence that the defendant carried a bomb; that the trial justice should have directed a verdict of not guilty or granted the defendant's request for certain interrogatories; that he should have granted certain instructions; and that his instructions regarding the applicability of §11-1-3, the

aiding and abetting statute, were erroneous. To be sure, the defendant raises questions, but she limits her brief to a mere general statement of each without supporting them with adequate or meaningful arguments, analysis, discussion, or citation of authority. In brief, she has not complied with the requirements of Rule 16 of this court and these contentions are therefore, at least for the purposes of this proceeding, deemed to have been waived, *State* v. *Carufel*, 106 R. I. 739, 263 A.2d 686 (1970).

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *Edward E. Dillon, Jr.*, Special Asst. Attorney General, for plaintiff.

*Berberian & Tanenbaum, Aram K. Berberian*, for defendant.