Robert W. BEAUDOIN

v.

J. Michael LEVESQUE, Director, et al.

No. 96–64–Appeal.

Supreme Court of Rhode Island.

June 27, 1997.

Marty C. Marran, Cranston, Joseph E. Marran, Jr., Pawtucket, for Plaintiff.

Elizabeth A. Kelleher, East Greenwich, Gary T. Gentile, Warwick, Manuel Andrews, Jr., Providence, Raymond E. Lambert, West Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This matter came before this Court on April 8, 1997, pursuant to an order directing both parties to appear and show cause why the issues raised in the plaintiff's appeal from the entry of summary judgments in favor of the defendants should not be summarily decided.

After hearing oral arguments and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeal will be decided at this time.

On August 1, 1985, a restraining order was issued against the plaintiff, Robert W. Beaudoin (Beaudoin), at the request of his wife, Karen, in connection with a pending divorce action. On November 30, 1987, Beaudoin was arrested by two West Warwick police officers, Nicholas Pellegrino (Pellegrino) and Cathy Ochs (Ochs), for the alleged violation of that restraining order. Beaudoin was detained overnight at the police station. On December 8, 1987, a Family Court justice

dissolved the restraining order. On February 4, 1988, the charge of violating the restraining order was sua sponte dismissed by the trial justice because Karen refused to prosecute. The Beaudoins were divorced by final judgment on April 5, 1988.

On March 3, 1989, Beaudoin filed a complaint against J. Michael Levesque in his capacity as acting finance director for the town of West Warwick, Pellegrino individually and in his capacity as a police officer for the town of West Warwick, Ochs individually and in her capacity as a police officer for the town of West Warwick, and Raymond E. Lambert individually and in his then-capacity as assistant town solicitor for the town of West Warwick. That complaint asserted claims for false arrest, false imprisonment, malicious prosecution, and abuse of process. Beaudoin alleged in support of his claims that at the time of his arrest he and his wife, Karen, had reconciled so the restraining order was no longer in effect and there was therefore no valid basis for his arrest.[1] He also claimed that Raymond E. Lambert (Lambert), one of the named defendants, should not have represented the town as the town solicitor in the prosecution against him because Lambert represented Beaudoin's wife, Karen, in a recently completed divorce action. He also claims that the town was negligent in supervising its police officers and town solicitors.

The defendants filed separate motions for summary judgment on April 28, May 11, and May 13, 1994. Police Officers Pellegrino and Ochs asserted in support of their joint summary judgment motion that on November 30, 1987, when they arrived at Gough Avenue in West Warwick where Beaudoin was eventually arrested, they were told by Karen that Beaudoin had been banging on her front door and "yelling and screaming." Karen told Pellegrino and Ochs that she had a restraining order against Beaudoin and that she wanted to press charges. Pellegrino and Ochs also had pre-existing knowledge that Beaudoin had been arrested at least twice before for the same type of disorderly con-

---

1. Karen denied that allegation in an affidavit submitted in support of the motion for summary judgment.

duct.[2] Furthermore, a witness at the scene corroborated Karen's complaints. Thus, Pellegrino and Ochs averred that they had more than sufficient probable cause to arrest Beaudoin and were, as a result, entitled to qualified immunity for their actions.

Lambert asserted, in an affidavit submitted along with his motion for summary judgment, that he was in court during Beaudoin's pretrials and trials only because he had other matters pending before the court. He additionally asserted that he never acted in a prosecutorial function in any of the previous numerous complaints brought against Beaudoin because he was aware of the existing conflict and other prosecutors were always assigned to the Beaudoin actions. An affidavit submitted by the police prosecutor for the West Warwick police department, Ronald Bertrand (Bertrand), in support of Lambert's motion for summary judgment corroborates Lambert's assertion that he did not handle any of the complaints pertaining to Beaudoin. Moreover, Lambert averred that he never advised anyone about the arrest, charge, or prosecution of Beaudoin. He also argued that even if he had prosecuted Beaudoin, he would be entitled to absolute immunity, as opposed to the qualified immunity ordinarily given to police officers.

A hearing on all the motions for summary judgment was held on July 22, 1994, and summary judgments were granted at that time in a bench decision. The trial justice hearing the motions for summary judgment concluded that there was probable cause for Beaudoin's arrest and that Lambert was not involved in the prosecution of Beaudoin. She further determined that even if Lambert had participated in that prosecution, he would have been entitled to absolute immunity. We find the trial justice's analysis persuasive.

■ Under the facts of this case there was clearly probable cause to arrest Beaudoin, thereby vitiating his claims for malicious prosecution, false arrest, and false im-

prisonment. In order to recover on his claims for false imprisonment and false arrest, Beaudoin needed to prove that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Dyson v. City of Pawtucket,* 670 A.2d 233, 239 (R.I.1996). Beaudoin also needed to "show that he * * * was detained without legal justification." *Id; see also Mailey v. Estate of DePasquale,* 94 R.I. 31, 34, 177 A.2d 376, 379 (1962)("[t]he essential element of this tortious action is the restraint of another person without legal justification or without any color of legal authority"). In order for Beaudoin to sustain his claim for malicious prosecution, he was required to prove that "(1) defendants initiated a prior criminal proceeding against him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it terminated in [the plaintiff's] favor." *Solitro v. Moffatt,* 523 A.2d 858, 861–62 (R.I.1987). Probable cause in our law is a necessary element in false arrest, false imprisonment, and malicious prosecution claims.

"Probable cause exists when the facts and the circumstances within the officer's knowledge at the time of arrest, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person's belief that a crime has been committed and the suspect committed the crime." *Dyson,* 670 A.2d at 239.

■ The facts as presented in the motions for summary judgment and in the supporting affidavits, along with Beaudoin's objection to those motions, clearly warrant the conclusion that there was probable cause to arrest Beaudoin. " '[W]here the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law.' " *DeNardo v. Fairmount Foundries Cranston, Inc.,* 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979). When the police arrived at Karen Beaudoin's home, Karen

---

2. Police records show that Beaudoin pled nolo contendere to a charge of violating, on May 25, 1987, the same restraining order involved in this case. A police report also indicates that another arrest occurred on October 10, 1987, which re-

sulted in another nolo contendere plea to a charge of disturbing the peace. The police report for the later arrest stated that the residence on Gough Avenue had "been the scene of many disturbances involving Robert Beaudion [*sic* ]."

told them that Beaudoin had been banging on her front door and "yelling and screaming" at her. A witness at the scene corroborated Karen's story. Karen also told the police that Beaudoin was then violating an outstanding restraining order. The police also had independent knowledge that Beaudoin had been previously arrested for violating a restraining order, a charge to which he had pled nolo contendere. The police were also aware that Beaudoin had frequently caused marital disturbances in the past. Those accumulated facts certainly warranted a reasonably prudent person's belief that a crime had been committed and that Beaudoin had committed that crime. Accordingly, the trial justice did not err in granting summary judgment with regard to the false imprisonment, false arrest, and malicious prosecution counts in Beaudoin's complaint.

 Beaudoin, in order to prove his abuse of process claim, was required to show that the legal proceeding, "although set in motion in proper form, [became] perverted to accomplish an ulterior or a wrongful purpose for which it was not designed." *Hillside Associates v. Stravato*, 642 A.2d 664, 667 (R.I.1994). Other than Beaudoin's unsupported and conclusory allegations, there is nothing in the record that even suggests that the prosecution against Beaudoin was perverted for an ulterior or a wrongful purpose. "To avoid summary judgment * * * the party opposing the motion cannot rest upon mere allegations or denials but must affirmatively set forth competent evidence that raises a genuine issue to be resolved." *Harritos v. Cambio*, 683 A.2d 359, 360 (R.I.1996). Accordingly, summary judgment was properly entered with regard to the abuse of process count in Beaudoin's complaint.

 Additionally, even assuming arguendo that there had been a sufficient basis for the claims raised in Beaudoin's complaint, Lambert would not be liable because he had absolute immunity as a prosecutor.[3]

"[T]he absolute immunity of judges from liability in such cases *extended to prosecuting attorneys* and * * * as to the scope of the rule and the reasons given in its support as follows: ' "Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry. * * * If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action." ' " (Emphasis added.) *Suitor v. Nugent*, 98 R.I. 56, 62–63, 199 A.2d 722, 725 (1964).

Accordingly, Lambert had absolute immunity in his role as a prosecutor and was not subject to liability for the claims raised in Beaudoin's complaint.[4]

For all the foregoing reasons, Beaudoin's appeal is denied and dismissed. The summary judgments are affirmed, and the papers in this case are remanded to the Superior Court.

GOLDBERG, J., did not participate.

---

3. Although the absolute immunity applies only to Lambert while he was acting in his official capacity, Lambert also would not have been individually liable because, as we have previously determined, there was probable cause for the arrest.

4. We note that in light of the affidavits from Bertrand and Lambert, it is highly probable that Lambert was not actually involved in Beaudoin's prosecution at all since that is what is attested to in both Lambert's affidavit and Bertrand's affidavit. However, as discussed above, even if one assumes that Lambert was involved in Beaudoin's prosecution, he could not be held liable for his actions in his role as a prosecutor.