Duane HORTON

v.

PORTSMOUTH POLICE
DEPARTMENT et
al.

No. 2010–11–Appeal.

Supreme Court of Rhode Island.

June 6, 2011.

Roger Roots, Esq., for Plaintiff.

Karen K. Corcoran, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Duane Horton (plaintiff or Horton) appeals from a Superior Court grant of sum-

mary judgment in favor of the defendants, the Portsmouth Police Department (department) and various Town of Portsmouth officials (collectively, defendants), dismissing the plaintiff's thirteen-count amended complaint alleging malicious prosecution, false arrest, false imprisonment, tortious denial of access to public records, violations of civil rights stemming from these allegations and also from a failure to properly train and supervise the police officers, failure to destroy records after exoneration, and illegal retention of records of identification. The plaintiff argues that the motion justice erroneously determined as a matter of law that the officers of the department had probable cause for each of the prosecutions against Horton and that he inappropriately granted their motion for summary judgment. The case came before this Court for oral argument on May 5, 2011, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After an examination of the written and oral submissions of the parties, we are of the opinion that cause has not been shown and the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On January 17, 2006, Horton filed an eleven-count complaint in Newport County Superior Court naming the department, and nine department officials,[1] the Portsmouth Town Administrator, Robert Driscoll, and plaintiff's wife, Josephine Horton (Ms. Horton), as defendants.[2] The plaintiff alleged single counts of false arrest, false imprisonment, tortious denial of access to public records, malicious attempt to frame, false reporting, malicious prosecution, abuse of process, failure to properly destroy records after exoneration, and illegal retention of records of identification. The remaining two counts alleged civil-rights violations.

The department and the ten officials named in the complaint filed an answer on March 13, 2006. The defendants denied all the allegations contained in the counts directed toward them. They admitted that Ms. Horton contacted the department, but denied that she provided false information.

The plaintiff filed an amended complaint on February 22, 2007, alleging thirteen counts. He alleged five counts of malicious prosecution relating to his arrests on or about July 24, 2004 (count 1); January

---

1. The original complaint named Michael Arnold, Alberto Bucci, Anthony Cambrola, Garrett Coyne, Jeffrey Furtado, Lance Hebert, Steven Hoetzel, Harry Leonard, and Dennis Seale as defendants. In a later-filed amended complaint, plaintiff removed Michael Arnold and Garrett Coyne from the named defendants. He added as named defendants Brett Bucholz, Stephen Burns, John Cahoon, Mark Daniels, John Huppee, and Stephen Sullivan. John Huppee's motion to dismiss in lieu of an answer for insufficient service of process was granted by a justice of the Superior Court on June 19, 2007, and a judgment to that effect was entered that same day.

2. The complaint described Josephine Horton (Ms. Horton) as plaintiff's "estranged wife" and alleged that plaintiff and Ms. Horton had been married since 1993 and were in the process of divorcing when the facts giving rise to the complaint occurred. In his later-filed amended complaint, Horton stated that their marriage ended in October 2006. In her answer to the original complaint, Ms. Horton asserted four counterclaims against defendant. In a stipulation between plaintiff and Ms. Horton filed on June 6, 2006, plaintiff agreed to dismiss all claims against Ms. Horton, and she agreed to dismiss her counterclaims against Horton. Accordingly, his amended complaint omitted all claims originally asserted against Ms. Horton.

23, 2006 (count 2); February 6, 2006 (count 3); February 9, 2006 (count 4); and July 17, 2006 (count 8). The plaintiff also raised one count of malicious prosecution for his incarceration from February 9, 2006, until February 14, 2006 (count 5), and one count of false arrest for his arrest on February 9, 2006 (count 6). The remaining counts alleged one count of false imprisonment for his incarceration from February 9, 2006, until February 14, 2006 (count 7), one count of tortious denial of access to public records (count 9), civil-rights violations (counts 10 and 11), failure to properly destroy records after exoneration (count 12), and illegal retention of records of identification (count 13).[3] Horton sought "appropriate compensatory, punitive, injunctive, and exemplary relief and fines, as well as reasonable attorney fees." On March 2, 2007, defendants filed an answer to plaintiff's first amended complaint. They denied all allegations set forth against them.

On September 22, 2009, defendants filed a motion for summary judgment. They argued in support of the motion that "they had probable cause to prosecute, arrest and/or imprison the plaintiff on each occasion of arrest and/or imprisonment" and therefore counts 1–8 must fail as a matter of law. As for count 9, alleging tortious denial of access to public records, defendants argued that they were entitled to summary judgment because the requested records "were records exempted from the Rhode Island Access to Public Records Act" codified at G.L.1956 chapter 2 of title 38. As to counts 10 and 11, defendants contended that "none of plaintiff's claims [were] covered under the Rhode Island Civil Rights Act of 1990" codified at G.L. 1956 chapter 112 of title 42 and thus their motion for summary judgment should be granted. Finally, defendants argued that they were entitled to summary judgment on counts 12 and 13, alleging failure to properly destroy records after exoneration and illegal retention of records of identification, respectively, because the statute under which these claims were raised, G.L. 1956 § 12–1–12, "does not include a civil remedy."

The motion was heard before a justice of the Superior Court on January 4, 2010. After hearing the arguments of the parties, the motion justice rendered a decision from the bench. His recitation of the facts was as follows.

Ms. Horton filed for divorce from plaintiff in March 2003, which precipitated approximately three and a half years of litigation.[4] At the outset, a Family Court justice issued an order that permitted the couple "to share the same dwelling" but "assigned [them] separate living areas." Ms. Horton then resided in the "main" living area and plaintiff "in the attached in-law apartment." As the motion justice noted, and as the record bears out, this "arrangement * * * in retrospect, was less than ideal."

While the Hortons' divorce was pending, plaintiff was arrested on five separate occasions by officers of the department on July 24, 2004; January 23, 2006; February 6, 2006; February 9, 2006; and July 17, 2006. He was incarcerated from February

---

3. The plaintiff sought class-action certification for counts 12 and 13. After a hearing before a justice of the Superior Court on January 7, 2008, his request for class certification was denied.

4. The plaintiff's appeal from the judgment of divorce came before this Court to challenge the trial justice's assignment of property and the award of alimony, health insurance coverage, and custody of the parties' two children to Ms. Horton. *Horton v. Horton,* 891 A.2d 885, 887 (R.I.2006) (affirming Family Court decision in part and vacating it in part).

9, 2006, until February 14, 2006, after allegedly violating his bail. Each of the arrests was initiated after the department's receipt of a complaint from Ms. Horton. Horton also unsuccessfully requested "public records regarding his arrest[s]."

The motion justice described in detail each instance in which plaintiff was arrested in connection with this case.[5] He then summarized the parties' respective arguments. Significantly, he noted that plaintiff disputed many of the facts asserted against him and maintained that the "mosaic of facts and circumstances" revealed an absence of probable cause for each arrest. After articulating the standard to which he was required to adhere when ruling on a motion for summary judgment and relevant caselaw governing claims of malicious prosecution, the motion justice proceeded to rule on each of the counts.

He granted the motion for summary judgment as to counts 1, 2, 3, 4, and 8 on the grounds that defendants possessed probable cause to arrest in each instance. Having found that there was probable cause for the arrests of plaintiff on February 6, 2006, and February 9, 2006, the motion justice likewise held that probable cause also existed for the Office of the Attorney General's request for revocation of bail under Rule 46(g) of the Superior Court Rules of Criminal Procedure and for the resultant denial of bail pending a hearing, which resulted in the period of incarceration underlying count 5 of plaintiff's complaint. Likewise, he held that the existence of probable cause for the underlying arrests precluded defendants' liability for false arrest and false imprisonment as alleged in counts 6 and 7.

Concerning plaintiff's allegation of tortious denial of access to public records in count 9, the motion justice ruled that the records sought statutorily were exempt from disclosure "because they related to an ongoing criminal investigation." Because Horton "failed to show why these records were not exempt under the statute," the motion justice granted summary judgment as to that count. Next, he addressed counts 10 and 11, alleging civil-rights violations. The motion justice noted that "[a]ll of the plaintiff's civil rights claims arise from the defendants' alleged lack of probable cause in each of the incidents" and that, because he "found that indeed the police officers possessed the requisite probable cause to make the arrest in each of the incidents," these claims must fail as well. As to counts 12 and 13, alleging failure to properly destroy records after exoneration and illegal retention of records of identification, respectively, the motion justice ruled that plaintiff "fail[ed] to plead the elements of [these] claims," and granted the motion for summary judgment on both. Finally, he concluded that "defendants cannot be individually liable and likewise enjoy immunity for their actions that were taken in the course of their duties in their official capacity as they were taken in good faith based upon probable cause."

Therefore, he granted defendants' motion for summary judgment "on each of the counts contained in plaintiff's complaint." An order granting defendants' motion was entered on January 7, 2010, and a final judgment was entered that same day. The plaintiff filed a premature notice of appeal on January 5, 2010.[6]

---

**5.** The additional facts underlying each arrest and the motion justice's specific rulings will be provided in our discussion of the issues.

**6.** We will treat the prematurely filed notice of appeal as timely filed because a final judgment ultimately was entered. *Downey v. Carcieri,* 996 A.2d 1144, 1149 n. 5 (R.I.2010).

## II

### Issues on Appeal

In his summary of the issues to this Court, Horton identifies ten discrete issues of which he seeks review. Generally, he argues that summary judgment improperly was granted because defendants in each instance lacked probable cause to arrest and prosecute him for various offenses, including violations of a no-contact order involving a person not named in the order; inadvertent contact with Ms. Horton; breaking and entering a dwelling that he owned; willful trespass of his own property; peering into the windows of a home he owned; and vandalism of "a video camera mounted on his home without his consent." Horton also contends that the motion justice erred when he granted summary judgment on his remaining claims concerning his access to records, alleged civil-rights violations, and failure to destroy records of identification after exoneration. For their part, defendants refine the issues before this Court to four questions: (1) whether defendants possessed probable cause for each instance of prosecution, arrest, and imprisonment; (2) whether defendants were entitled to qualified immunity; (3) whether the requested records were exempt from release; and (4) whether § 12–1–12 provides a private cause of action for the failure to destroy records of identification after exoneration.

## III

### Standard of Review

 This Court reviews a grant of a motion for summary judgment *de novo*. *Zanni v. Voccola*, 13 A.3d 1068, 1070 (R.I. 2011) (citing *Classic Entertainment & Sports, Inc. v. Pemberton*, 988 A.2d 847, 849 (R.I.2010)). "In doing so, we apply the same rules and criteria as the hearing justice." *Id.* Additionally, when "review-

ing the evidence, we draw 'all reasonable inferences in the light most favorable to the nonmoving party.'" *Hill v. National Grid*, 11 A.3d 110, 113 (R.I.2011) (quoting *Fiorenzano v. Lima*, 982 A.2d 585, 589 (R.I.2009)). However, it is this party's burden "to prove the existence of a disputed issue of material fact by competent evidence; it 'cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" *Id.* (quoting *Classic Entertainment & Sports, Inc.*, 988 A.2d at 849). We note that this Court remains ever mindful "that '[s]ummary judgment is an extreme remedy that should be applied cautiously.'" *Id.* (quoting *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 57 (R.I.2010)).

## IV

### Discussion

 "This Court has defined malicious prosecution 'as a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein.'" *Palazzo v. Alves*, 944 A.2d 144, 152 (R.I.2008) (quoting *Clyne v. Doyle*, 740 A.2d 781, 782 (R.I.1999)). "Although the tort of malicious prosecution has long been recognized in this jurisdiction, it is nevertheless a disfavored cause of action since it 'tend[s] to deter the prosecution of crimes and/or to chill free access to the courts.'" *Id.* at 153 (quoting *Brough v. Foley*, 572 A.2d 63, 66 (R.I.1990)). Therefore, "the plaintiff must establish 'clear proof' of malice and lack of probable cause." *Hill v. Rhode Island State Employees' Retirement Board*, 935 A.2d 608, 613 (R.I.2007) (quoting *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 345 (R.I.1994)).

 Just as it is to a claim of malicious prosecution, "[t]he existence of probable cause is a complete defense to a false arrest claim." *Henshaw v. Doherty*, 881 A.2d 909, 919 (R.I.2005) (quoting *Weinstock v. Wilk*, 296 F.Supp.2d 241, 247 (D.Conn.2003)); *see Hill*, 935 A.2d at 613. "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime." *State v. Girard*, 799 A.2d 238, 249 (R.I.2002) (quoting *State v. Kryla*, 742 A.2d 1178, 1182 (R.I.1999)). "[P]robable cause is determined under a flexible 'totality-of-the-circumstances' analysis." *Id.* (quoting *Kryla*, 742 A.2d at 1182). Accordingly, "[e]stablishing the existence of probable cause to arrest a person does not require the same degree of proof needed to determine whether that person is guilty of the crime in question." *Id.* (quoting *State v. Guzman*, 752 A.2d 1, 4 (R.I.2000)). Likewise, in a malicious-prosecution action, "[t]he facts that support the criminal charge at issue need not convince a prudent person that guilt exists beyond a reasonable doubt, but it is sufficient if the facts known to the accuser provide reasonable grounds for a belief that the accused has engaged in criminal activity." *Hill*, 935 A.2d at 613.

## A

### Probable Cause as a Question of Law

 As an initial matter, we address plaintiff's argument "that the question of whether a defendant had probable cause to prosecute a plaintiff is a question of fact for the jury in a malicious prosecution action." To support this assertion, Horton relies on this Court's opinion in *Quinlan v. Breslin*, 61 R.I. 327, 200 A. 989 (1938). In

that case, the plaintiff brought an action in Superior Court alleging that the defendant maliciously prosecuted him on the charge of assault and battery. *Id.* at 328–29, 200 A. at 990. "[T]he trial justice granted the defendant's motion for a nonsuit on the grounds that the plaintiff had presented no evidence of the want of probable cause * * * on the part of the defendant." *Id.* at 329–30, 200 A. at 991. This Court held that the motion justice erred in granting the motion because the discharge of the plaintiff in the underlying criminal case "was *prima facie* evidence of the want of probable cause," which "called for the presentation of competent evidence [by the defendant] that there was in fact probable cause for instituting the criminal proceedings." *Id.* at 331, 200 A. at 991. The defendant did not make such a presentation, and the *Quinlan* Court concluded that "[t]he existence or want of probable cause was, therefore, an issue of fact" that precluded the grant of the motion. *Id.*

The *Quinlan* case is distinguishable from the instant matter. First, this Court in *Quinlan* was careful to limit its holding to "the circumstances of [that] case." *Quinlan*, 61 R.I. at 332, 200 A. at 992. Second, although the facts in that case were "practically undisputed," the existence of probable cause raised a question of fact requiring explanation by the defendant, which rendered erroneous the grant of the defendant's motion for a nonsuit because the defendant failed to sustain her burden to rebut the presumption of the want of probable cause. *Id.* at 328–31, 200 A. at 990–91. Here, both parties set forth evidence about the existence or want of probable cause, and no further explanation was required from defendants.

Additionally, this Court more recently has affirmed a grant of summary judgment in an action alleging false arrest, false imprisonment, and malicious prosecu-

tion when the motion justice determined that there was probable cause for the plaintiff's arrest. *Beaudoin v. Levesque*, 697 A.2d 1065, 1066, 1067, 1068 (R.I.1997). We held that "[t]he facts as presented in the motions for summary judgment and in the supporting affidavits, along with [the plaintiff's] objection to those motions, clearly warrant the conclusion that there was probable cause to arrest [him]." *Id.* at 1067. Further, we noted that "[w]here the facts suggest only one reasonable inference, the [motion] justice may properly treat the question as a matter of law." *Id.* (quoting *DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979)). Indeed, "[t]he existence of probable cause can sometimes be determined as a matter of law; and therefore, in appropriate situations, that issue can properly be the subject of a motion for summary judgment." *Henshaw*, 881 A.2d at 917 (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir.2003)). Additionally, "[w]hether defendants in a malicious-prosecution action had probable cause to initiate a criminal action is a *question of law to be determined by the court.*" *Hill*, 935 A.2d at 613 (quoting *Solitro v. Moffatt*, 523 A.2d 858, 862 (R.I. 1987)) (emphasis added).

Therefore, Horton's assertion that "whether a defendant had probable cause to prosecute a plaintiff is a question of fact for the jury in a malicious prosecution action" is not an accurate statement of law. Accordingly, we hold that the motion jus-

tice did not err when he decided the existence of probable cause to arrest and prosecute plaintiff as a matter of law when ruling on the motion for summary judgment. We will proceed to review *de novo* the grant of summary judgment on the grounds that defendants possessed probable cause to initiate the various proceedings against plaintiff. *Henshaw*, 881 A.2d at 914, 917.

## B

### Probable Cause to Arrest and Prosecute (Counts 1–4, 6, and 8)

The trial justice granted defendants' motion for summary judgment as to the counts of malicious prosecution and false arrest on the ground that defendants had probable cause to arrest plaintiff and to initiate the proceedings against him.[7] When probable cause exists to initiate a proceeding, a claim of malicious prosecution must fail; likewise, when probable cause exists to arrest, a claim of false arrest must fail as well.[8] *Hill*, 935 A.2d at 613; *Henshaw*, 881 A.2d at 919. The plaintiff seeks review of the grant of summary judgment as to his claims of malicious prosecution stemming from five distinct arrests pursuant to arrest warrants that he contends defendants obtained and executed without probable cause, resulting in his malicious prosecution, as well as one

---

7. The plaintiff represents that "[e]ach of these prosecutions was dismissed or otherwise terminated in Horton's favor." This fact, an element of a claim for malicious prosecution, is not in dispute. "However, a lack of probable cause will not be inferred from the mere failure to prosecute nor from the single fact that the plaintiff was acquitted from the charge lodged against him." *DeFusco v. Brophy*, 112 R.I. 461, 463 n. 1, 311 A.2d 286, 287 n. 1 (1973).

8. "To recover damages for malicious prosecution, a party must 'prove that (1) defendants initiated a prior criminal proceeding against him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it terminated in [the plaintiff's] favor.'" *Hill v. Rhode Island State Employees' Retirement Board*, 935 A.2d 608, 613 (R.I.2007) (quoting *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I.1987)).

count of false arrest. We shall address each of these claims *seriatim.*

 First, however, we take this opportunity to emphasize that each of the instances of arrest in this case was done based on a warrant issued by a neutral magistrate. "[I]t is our view that, in close cases concerning the validity of an arrest, the benefit of the doubt should go to the authorities who have obtained a warrant from a neutral judicial officer before making the arrest." *Henshaw,* 881 A.2d at 914 (citing *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, * * * and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden * * *." *Id.* at 915 (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991)).

**1**

**Arrest on July 24, 2004 (Count 1)**

 On July 24, 2004, the department received a telephone call from Ms. Horton. As a result, officers responded to the Horton residence "to investigate a claim of domestic felony assault." In relevant part, Ms. Horton complained that Horton had "spanked [their] daughter and when [Ms. Horton] stood behind his car to stop him from leaving, he continued to drive [it] toward her." Based on these complaints, Det. Steven Hoetzel, a defendant, swore to an affidavit and obtained a warrant for plaintiff's arrest, charging plaintiff with domestic felony assault.

After plaintiff was arraigned, a judge of the District Court "issued a no[-]contact order on July 25, 2004 restraining plaintiff from any contact with [Ms. Horton]." The next day, Ms. Horton filed "a complaint for protection from abuse in Family Court," and that court "issued a temporary order of protection from abuse." The order prevented Horton from "contacting, assaulting, molesting, or interfering with [Ms. Horton] at home, on the street or elsewhere" and denied him visitation with his children until further hearing. This order was extended on May 2, 2005, by a justice of the Family Court through "a judgment of protection from abuse" until May 2, 2006. However, the judgment permitted plaintiff to have "supervised visitation of the minor children."

The motion justice held that "[w]ith regard to the July 24, 2004 arrest contained in [c]ount 1, the defendants clearly had probable cause" because "[t]hey had the statement of [Ms. Horton] upon which to rely and had no reason to believe she was not trustworthy." The motion justice noted that, although the evidence may not have supported guilt beyond a reasonable doubt, "it nonetheless amount[ed] to probable cause." After conducting a *de novo* review, we affirm the grant of summary judgment as to count 1.

In our view, Ms. Horton's report to the department on July 24, 2004, constituted " 'reasonably trustworthy information' " that was " 'sufficient to warrant a reasonable person's belief that a crime ha[d] been committed and that [Horton] * * * ha[d] committed the crime.' " *Girard,* 799 A.2d at 249. Detective Hoetzel had no reason to disbelieve Ms. Horton's tearful report that plaintiff had refused to allow her children to have a cellular phone during their visitation with their father per their counselor's recommendation and that he became irate, "grabb[ing] the children from [her]" and "bumping her" with his car. Furthermore, a neutral judicial officer issued a warrant based on Det. Hoetzel's

affidavit attesting to this information received from Ms. Horton, and, therefore, defendants should receive the benefit of the doubt concerning the validity of this arrest. *See Henshaw,* 881 A.2d at 914. In our view, plaintiff has not sustained his "heavy burden" in demonstrating that this warrant was based on less than probable cause, and his claim of malicious prosecution emanating from this arrest must fail. *See id.* at 915.

**2**

### Arrest on January 23, 2006 (Count 2)

██ Ms. Horton contacted the department on January 21, 2006, and officers again responded to the Horton home. She complained that plaintiff violated the no-contact order by looking through the window into her assigned living area as witnessed by their daughter inside the home.[9] After receiving this complaint and "confirming that the [no-contact order] was still in effect," defendant Det. Sgt. Harry Leonard completed an affidavit, and an arrest warrant was issued for the plaintiff on January 22, 2006, which was executed the next day. Horton was charged with violating the no-contact order.

The motion justice held that defendants had probable cause to arrest plaintiff on January 23, 2006, which arrest was the basis for count 2 of the complaint. He acknowledged plaintiff's argument that the officers lacked probable cause to arrest him in that instance because he had not been arrested "for supposedly similar complaints on three prior occasions." However, the motion justice held that this seeming inconsistency was not sufficient to defeat the existence of probable cause simply because the officers may have had different interpretations of orders from other officers. Additionally, and according to the motion justice, "most importantly," the officers did not act rashly but, rather, "sought a warrant from a neutral magistrate who issued the warrant based upon the police officers' testimony which supplied the requisite probable cause." He noted that "the benefit of the doubt should go to the authorities who have obtained a warrant from a neutral judicial officer before making the arrest" and even viewing the evidence in a light most favorable to plaintiff, Horton could not sustain his "heavy burden" to show that defendants did not have probable cause to arrest him on that occasion.

Upon our *de novo* review, we come to the same conclusion as the motion justice that Horton has not sustained his heavy burden in this instance. The plaintiff submits that doubt may be raised in regard to the validity of this arrest because, he argues, defendants acted "in plain contravention of legal advice" from the Office of the Attorney General that the no-contact order that he was alleged to have violated did not extend to his children. He also contends that defendants "concealed from the magistrate the fact that [his and Ms. Horton's] daughter * * * was not named in

---

9. According to the arguments of plaintiff and defendants before the motion justice and this Court, Ms. Horton contacted the department again that same day "to complain that plaintiff * * * had used a key and entered her area of the house * * * while she was in her home." However, in his recitation of the facts, the motion justice found that Ms. Horton "contacted the [department] to complain that the plaintiff had used a key to enter her area of the house * * * while [she] *wasn't*

home." (Emphasis added.) The motion justice later discussed that "plaintiff * * * submitted evidence * * * that [Ms. Horton] had tricked him into entering her apartment when she was there" by making him believe that she was not. Either variation of this event was not included in the affidavit that the department prepared after Ms. Horton complained that plaintiff had violated the no-contact order.

the no-contact order and that the officers were defying legal advice."

Even taking the record in a light most favorable to plaintiff as the nonmoving party that this information that he alleges was omitted from the affidavit, there nonetheless was sufficient information to support a finding of probable cause. The no-contact order prohibited plaintiff from "contacting, assaulting, molesting, or otherwise interfering with [Ms. Horton] at home," which prohibition the officers had reasonable grounds to believe he contravened on the basis of Ms. Horton's trustworthy report that he peered into the window of her designated living area. Additionally, the temporary restraining order that was extended in May 2005 originally was issued on behalf of plaintiff's children, as well as Ms. Horton. Detective Sergeant Leonard's affidavit states that he verified that the no-contact order was still in effect, which, in our view, was "an initial investigation that disclosed sufficient facts for [defendants] reasonably to believe that" plaintiff violated the order. *See Solitro*, 523 A.2d at 862–63. Therefore, we conclude that any doubt about the existence of probable cause at the time of arrest should be resolved in favor of defendants who obtained a warrant from a neutral judicial officer and summary judgment was properly granted as to count 2. *See Henshaw*, 881 A.2d at 914; *Solitro*, 523 A.2d at 863; *see also Hill*, 935 A.2d at 614 (noting that, although plaintiff had waived the issue, he did not rebut by clear proof the presumption of probable cause for initiating the prosecution resulting from the grand jury's issuance of an indictment against plaintiff).

### 3

### Arrest on February 6, 2006 (Count 3)

 A few weeks later, on February 4, 2006, Ms. Horton contacted the depart-

ment once more to complain that plaintiff violated the no-contact order by "prying boards off an area in the laundry room * * * which she had placed there to keep the plaintiff from entering the laundry room while she was [inside]." The motion justice found that the responding officers observed plaintiff prying the boards and "sticking his head through the hole he created." The plaintiff declined to speak to the officers, who departed. However, that same day, Ms. Horton made an identical complaint to the department. The officers responded again to the Horton residence, where they observed plaintiff exhibiting the same behavior. Detective Hoetzel swore to these events in an affidavit and obtained a warrant for plaintiff's arrest, which was executed on February 6, 2006. Horton again was charged with violating the restraining order and breaking and entering.

Concerning count 3, pertaining to the arrest occurring on February 6, 2006, the motion justice held that plaintiff failed to raise a genuine issue of material fact by simply asserting that he could present testimony that the actions attributed to him were impossible. He stated that in plaintiff's opposition to the motion for summary judgment, plaintiff could not "merely state the names of witnesses who will testify in a trial." He concluded that defendants possessed probable cause to arrest for violation of the no-contact order as established by Ms. Horton's complaint and their personal observations.

Again, it is clear that the no-contact order that was in effect on February 4, 2006, prevented plaintiff from "contacting" and "interfering" with Ms. Horton "at home." According to the affidavit submitted by Det. Hoetzel, the officers not only had Ms. Horton's report to rely on, but also their own observations of plaintiff's actions in violation of these strictures.

However, Horton argues that the motion justice "relie[d] on a falsified arrest affidavit" when he concluded that probable cause to arrest existed on the basis of the officer's personal observations of plaintiff's actions as attested to in the affidavit submitted to the magistrate who issued the arrest warrant. He claims that the incident report stated that the officers observed Horton "attempting to enter the *basement* (on an entirely different floor than the laundry room)." [10] Horton argues that he made an offer of proof that the action of "sticking his head through the door" was impossible, but we agree with the motion justice that this was insufficient to raise a genuine issue of material fact, which must be demonstrated by evidence of specific facts. *See Hill,* 935 A.2d at 614. Even excising the police officer's observations from our analysis, we remain of the opinion that based on Ms. Horton's multiple reports, which defendants had no reason to consider untrustworthy, it was reasonable for them to believe that plaintiff had violated the no-contact order. *See id.* at 613. Therefore, after reviewing the record before us, we conclude that plaintiff has not rebutted the presumption that there was probable cause to arrest plaintiff for violating the no-contact order. *See Solitro,* 523 A.2d at 863.

Additionally, plaintiff argues that defendants defied the advice of the Office of the Attorney General that the lack of clear boundaries in the laundry room precluded any prosecution for breaking and entering or trespass. However, defendants requested an arrest warrant to be used "so that [Horton] may be brought before the court to answer to a charge of [v]iolation of a[n]o [c]ontact [o]rder," not breaking and entering or trespass. It is our opinion that there was sufficient information to support defendants' reasonable belief that plaintiff had violated the no-contact order based on Ms. Horton's report and their observations of plaintiff dismantling a barrier Ms. Horton had constructed to prevent plaintiff from entering her laundry room. *Girard,* 799 A.2d at 249. Therefore, we conclude that plaintiff did not demonstrate clear proof of a lack of probable cause to initiate a proceeding against plaintiff for this alleged violation, and the motion justice did not err in granting summary judgment as to this count.

**4**

### Arrest on February 9, 2006 (Count 4 and Count 6)

■ The plaintiff submits that he was subjected to false arrest on February 9, 2006, for breaking and entering (count 6) and malicious prosecution relating to the arrest on that date for breaking and entering and violating the no-contact order (count 4). His attorney argued before the motion justice at the hearing on defendants' motion for summary judgment that Horton "was arrested for breaking and entering * * * on his own property," which "does not exist as a crime." Counsel for defendants argued in response at the hearing that "[a]ll of the other arrests that took place after [the initial July 24, 2004 arrest] included violations of a no[-]contact order," and defendants "had probable cause based on no[-]contact violations to arrest [Horton] on each occasion." She noted that when he entered Ms. Horton's designated living area, this occurred "in violation of the no[-]contact order."

---

**10.** To support this contention, plaintiff directs us to his memorandum supporting his objection to defendants' motion for summary judgment and the incident report attached as an exhibit accompanying this memorandum. However, we are unable to locate this document in the record. The Superior Court docket does not indicate that such a memorandum was filed.

Concerning count 4, which alleged malicious prosecution as a result of plaintiff's arrest on February 9, 2006, the motion justice found that probable cause existed to support defendants' arrest of plaintiff for violating the no-contact order when he entered Ms. Horton's living area and for breaking and entering, and he therefore granted the motion for summary judgment on this count. In so ruling, he noted that although probable cause may not have existed to support a "willful[ ] violat[ion]," the statute under which plaintiff was charged required only that he had notice of the order and that he violated it, which he did when he entered Ms. Horton's living area. Additionally, the motion justice held that Horton's "intrusion into [Ms. Horton's] apartment without her permission and under the terms of the * * * order granting [her] exclusive use and occupancy of this area, constituted an unlawful breaking and entering." He found it immaterial "that plaintiff owned the property" and held that "defendants indeed had probable cause to arrest the plaintiff for breaking and entering." Because he ruled that "there was probable cause for the arrest and incarceration of February 9, 2006," he also granted summary judgment as to count 6, alleging "false arrest on or around February 9, 2006."

"[D]raw[ing] 'all reasonable inferences in the light most favorable to the nonmoving party[,]'" as we must, we review whether probable cause existed to arrest and prosecute plaintiff for breaking and entering as well as violation of the no-contact order based on Ms. Horton's complaint to the department that he entered her judicially designated living area without her consent. *National Grid,* 11 A.3d at 113 (quoting *Fiorenzano,* 982 A.2d at 589). Even after drawing these inferences in favor of Horton, we conclude that defendants were entitled to summary judgment on counts 4 and 6. This is so because, contrary to plaintiff's contention that there was no probable cause to arrest him for breaking and entering under G.L.1956 § 11–8–2 [11] because he owned the home where he and Ms. Horton resided, it is undisputed that the home was divided into judicially designated living areas for each. The defendants had "reasonable grounds for a belief that" Ms. Horton was the tenant of her designated living area within the home and that Horton had engaged in the criminal activity of breaking and entering into an apartment without her consent. *See* § 11–8–2; *Hill,* 935 A.2d at 613. Therefore, it is our view that probable cause existed to arrest Horton for breaking and entering, and his claim of false arrest in count 6 must fail. *Hill,* 935 A.2d at 613; *Henshaw,* 881 A.2d at 919.

 Likewise, Horton's reported actions in entering Ms. Horton's living space gave defendants probable cause to prosecute him for violation of the no-contact order because this order prevented Horton from "contacting * * * or otherwise interfering with [Ms. Horton] at home." When they received the report from Ms. Horton, which they had no reason to disbelieve, that plaintiff apparently had entered into her judicially designated living area, defendants had a reasonable belief that plaintiff violated the no-contact order when he entered this area while she was present. *Girard,* 799 A.2d at 249. Therefore, we hold that plaintiff did not sustain his heavy burden to demonstrate a lack of probable cause to arrest and prosecute for breaking

11. General Laws 1956 § 11–8–2(a) sets forth the penalties imposed on "[e]very person who shall break and enter at any time of the day or night any dwelling house or apartment, whether the dwelling house or apartment is occupied or not, * * * without the consent of the owner or tenant of the dwelling house, apartment, building, or garage."

and entering and violating the no-contact order, and summary judgment also was granted properly as to count 4.

### 5

### Arrest on July 17, 2006 (Count 8)

 Ms. Horton contacted the department again on July 15, 2006. She reported to the responding officers that plaintiff was captured with a video camera mounted on the home looking into her windows and entering the garage containing her property. The officers viewed the video and made the same observations, in addition to viewing footage of Horton "striking the videocamera and attempting to damage it." A defendant, Det. Insp. Stephen Burns, swore to these events in an affidavit and obtained a warrant for plaintiff's arrest on July 16, 2006. Horton was arrested the next day.

As to count 8, pertaining to plaintiff's arrest on July 17, 2006, after he allegedly was depicted on video trespassing, engaging in disorderly conduct, and committing vandalism, the motion justice held that defendants possessed probable cause to arrest because they "were led to believe that the garage was part of [Ms. Horton's] exclusive domicile * * * and the officers were entitled to rely upon this in good faith." Similarly, he held that defendants also had probable cause to arrest for disorderly conduct because plaintiff's ownership of the building "was not readily known to the police officers." The motion justice also ruled that defendants had probable cause to arrest plaintiff on that date for vandalism because after viewing "plaintiff on the videotape attempting to forcibly remove the camera," defendants reasonably "conclude[d] that plaintiff had a willful and malicious or mischievous intent to damage [Ms. Horton's] camera."

Again, based on our *de novo* review, after reviewing the affidavit submitted to the neutral judicial officer as part of the request for the warrant for Horton's arrest in connection with this incident, we conclude that defendants had probable cause to arrest and prosecute. There is no indication that defendants had reason to consider Ms. Horton's reports untrustworthy. According to the affidavit sworn by Det. Insp. Burns, upon responding to the Hortons' home after receiving Ms. Horton's report, the officers observed that the pair were living in their own designated "apartments," but that they shared "common areas." The defendants also reasonably believed that the garage was part of Ms. Horton's judicially designated property because as attested to in the affidavit, it contained only her belongings, not plaintiff's. Moreover, they not only had Ms. Horton's report to rely on, but also the footage of Horton's actions captured by the video camera, which they viewed.

The plaintiff argues that summary judgment inappropriately was granted on this count because the motion justice made an inference in favor of the moving party because "[t]here was no evidence supporting the damage element" of vandalism because defendants only observed Horton "attempting to damage [the video camera]." However, we reiterate that "the existence of probable cause to arrest a person does not require the same degree of proof needed to determine whether that person is guilty of the crime in question." *Girard,* 799 A.2d at 249 (quoting *Guzman,* 752 A.2d at 4). Based on their observations of Horton "striking" the video camera, they possessed "reasonable grounds for a belief" that he had damaged it. *Hill,* 935 A.2d at 613. Therefore, we hold that plaintiff did not provide " 'clear proof' of * * * [a] lack of probable cause" and the motion justice did not err when he found that defendants had probable cause to prosecute plaintiff as to count 8. *See id.*

Thus concludes our discussion of probable cause as an "essential ingredient" of plaintiff's malicious-prosecution claims. *DeFusco v. Brophy,* 112 R.I. 461, 463, 311 A.2d 286, 287 (1973). The plaintiff was faced with a heavy burden to demonstrate a lack of probable cause to initiate the criminal proceedings against him. *See Henshaw,* 881 A.2d at 915. This burden was compounded by the presumption of probable cause resulting from defendants' procurement of arrest warrants from a neutral judicial officer. *Id.* Horton simply was unable to sustain these heavy burdens. Because we hold that plaintiff has not shown a want of probable cause in each of these instances of alleged malicious prosecution, we need not reach the element of malice. *Solitro,* 523 A.2d at 863 n. 5.

## C

### Remaining Claims

 For the remaining questions raised in the plaintiff's appeal concerning false imprisonment, civil-rights violations, denial of access to records of arrest, failure to destroy records of identification, and illegal retention of records of identification, he limits his discussion of these issues to a bare one-line "summary" of each. He provides no analysis of these issues in his supplemental memorandum submitted to this Court. "Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Kaveny v. Town of Cumberland Zoning Board of Review,* 875 A.2d 1, 10 (R.I.2005) (quoting *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129, 1131 n. 1 (R.I.2002)); *see Manchester*

*v. Pereira,* 926 A.2d 1005, 1015 n. 8 (R.I. 2007) (declining to reach the plaintiffs' "vaguely alluded-to contentions" on appeal "[i]n light of our well established rule that we will not substantively address an issue that was not adequately briefed"). Therefore, although the plaintiff "[t]o be sure, * * * raises questions," without accompanying these "general statement[s]," with "meaningful arguments, analysis, discussion, or citation of authority," we are unable to say that the plaintiff has complied with Article I, Rule 16 of the Supreme Court Rules of Appellate Procedure,[12] and we thus deem these contentions waived for appellate review. *State v. Arruda,* 113 R.I. 59, 65, 317 A.2d 437, 440 (1974). We note, however, that because we hold that the defendants possessed the requisite probable cause to arrest and prosecute, it follows that the plaintiff's false-imprisonment and civil-rights claims must fail as they depend on a want of probable cause. *See Beaudoin,* 697 A.2d at 1067 ("Probable cause in our law is a necessary element in * * * false imprisonment * * * claims."); *see Henshaw,* 881 A.2d at 919 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.") (quoting *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995)).

## V

### Conclusion

For the reasons elucidated in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to that court.

---

12. Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure provides in pertinent part that the brief of the appellant "shall contain * * * the points made, together with the authority relied on in support thereof * * *. [P]oints not made ordinarily will be treated as waived and not be considered by [this] Court."